## A04A1378. KELLY v. THE STATE.

(604 SE2d 242)

SMITH, Chief Judge.

Bobby Gene Kelly was charged by accusation with two counts of violating the Georgia Controlled Substances Act by possessing methamphetamine, OCGA § 16-13-30 (a), and one count of giving a false name to a law enforcement officer, OCGA § 16-10-25. He filed a motion to suppress evidence illegally obtained, which was denied. Kelly then pled guilty to giving a false name, and a bench trial was held on the other two counts on stipulated facts. The trial court found Kelly guilty of both counts. Kelly's motion for new trial was denied, and he appeals, raising as error only the denial of his motion to suppress. We affirm.

The evidence presented at the hearing on the motion to suppress showed that a Gwinnett County police sergeant initiated a traffic stop of the car Kelly was driving. The car, with three occupants, pulled into a hotel parking lot. The officer testified that even before he stopped his police car, he observed Kelly exit the car he was driving. Kelly was "fidgeting around," and when the officer asked him for his driver's license he kept "fidgeting" and "fumbling through papers," saying he could not find his insurance card and did not have his license. Kelly "popped" the trunk and then asked the officer if he could look in the trunk for his insurance card. The officer agreed, and Kelly sifted through some papers in the trunk and found a checkbook with the name of Derek Nalley.[1] Kelly told the officer: "This is me, Derek Nalley." Kelly told the officer he was headed to Wal-Mart to buy a tire, and needed to see a friend in room 211 of the hotel to get some money.

The officer found this story unusual because it was 4:00 a.m. He began checking the information Kelly had given him, and the physical description on record "on the computer" did not match Kelly. He went to room 211 and knocked, but no one answered, there were no lights or sounds, and it did not appear that anyone was present. He then questioned Kelly's two passengers separately. They both appeared nervous and "fidgety" and their eyes were glazed, which led the officer to believe they were under the influence of some drug. One of the passengers, Richardson, indicated that he had been staying occasionally in room 211 and had the keys to the room. He gave consent to search, but the key would not open the door.

---

[1] Although it has no bearing on the outcome of this appeal, we note that a serious discrepancy exists regarding Kelly's alias. The record includes an inventory sheet apparently showing the name as "Darrell Nolley," although the sheet is written in longhand and is barely legible. The transcript shows the name given as "Derek Nalley." Appellant's brief does not mention either name, while appellee's brief uses "Nolley." We choose to use "Nalley" because it derives from the transcript, which is the official record.

At that point, the officer told Richardson his story sounded phony, whereupon Richardson informed the officer that "Mr. Nalley" was a methamphetamine dealer who had been operating out of room 211. Richardson said he "kept the books for Mr. Nalley," he was currently high on methamphetamine that he received from "Mr. Nalley," and "in the past 72 hours he had seen large amounts of methamphetamines in" that room.

The officer next spoke with the other passenger, who also stated he was high on methamphetamine he received from "Mr. Nalley" and had seen large amounts of the drug in room 211 in the past 12 hours. While the officer was talking to the other passenger, Richardson called him back over, handed him a pill, and told the officer he had "missed something" when he patted him down. The pill was later determined to be "Ecstasy," and Richardson later pled guilty to possession of that drug.

The officer then confronted Kelly (under his alias of "Mr. Nalley"), who acknowledged he had been to room 211 and paid rent on it but insisted that the room was in someone else's name. The officer then called the county's narcotics squad, and an investigator was dispatched to the scene. The police officer gave the narcotics investigator the information he had garnered. A consent search of the car revealed two bank receipts for a total of more than $100,000. The two officers relayed the information they had by telephone to an officer with the Gwinnett County Drug Task Force, who used the information to draft an affidavit for a search warrant. The warrant was issued and taken to the two officers at the hotel, who then executed the warrant.

The inventory returned with the search warrant shows that in the hotel room, officers found currency, a quantity of suspected methamphetamine, drug paraphernalia, several suspected "Ecstasy" pills, a gun, two scales, and two baggies containing suspected marijuana. Some small plastic bags and other drug paraphernalia were found in the rear seat of Kelly's car.

The issues raised in the motion to suppress and argued at a hearing were twofold and both addressed the validity of the affidavit. Kelly first asserted that the affidavit was invalid because it was based upon information from two individuals who were unreliable both because they were high on amphetamines and because the officers had not known them before the incident. Kelly also argued that the affidavit was based on impermissible hearsay information, because the officer swearing out the warrant had not been at the scene but received from two other officers the information upon which the affidavit was based. After hearing the evidence and argument, the trial court denied the motion to suppress, finding that "the

totality of the circumstances rather than the reliability of the informant is what this search warrant hinges on."

At the hearing on Kelly's motion for new trial, the same issues were addressed. In a well-reasoned order, the trial court addressed both issues thoroughly and denied the motion for new trial. We agree with the trial court that the affidavit was valid.

A presumption of validity exists "with respect to an affidavit supporting a search warrant. [Cit.]" *Ledbetter v. State*, 190 Ga. App. 843, 844 (1) (380 SE2d 313) (1989). The affidavit "must set forth sufficient facts from which the magistrate or judge can independently determine the reliability of both the information and the informant. [Cit.]" *State v. Wesson*, 237 Ga. App. 789, 790 (516 SE2d 826) (1999). In *State v. Stephens*, 252 Ga. 181 (311 SE2d 823) (1984), the Georgia Supreme Court adopted the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983). Using that analysis, when determining whether probable cause exists for a search warrant,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

(Citation and punctuation omitted.) *Stephens*, supra at 182. "[T]his court continues to hold that an affidavit submitted in support of a search warrant must set forth sufficient facts from which the magistrate or judge can independently determine the reliability of both the information and the informant." (Citations and punctuation omitted.) *Robertson v. State*, 236 Ga. App. 68, 70 (510 SE2d 914) (1999). When a warrant is challenged, the challenger has the burden of proving its invalidity. *State v. Graddy*, 262 Ga. App. 98 (585 SE2d 147) (2003).

1. We first address Kelly's contention that the affidavit was defective because it did not show that the informants were reliable. "Probable cause may be predicated on an informant's tip only if, under the totality of the circumstances, including the informant's veracity and basis of knowledge, there is a fair probability that contraband or evidence of a crime will be found in a particular place. [Cit.]" *Robertson*, supra at 69. See also *Graddy*, supra at 98.

Kelly cites no authority in his brief supporting his contention, but in the trial court he relied upon *Fiallo v. State*, 240 Ga. App. 278 (523 SE2d 355) (1999), in support of his assertion that probable cause may be based on a tip from an informant only if the magistrate finds that both the informant and the information are reliable. Kelly asserts that in this case the affidavit included no information regarding the reliability of either the information or the informants and the warrant indicates that no oral testimony from the officer was provided. He argues that the magistrate therefore had no evidence from which to conclude that either the information or the informants were reliable, and the warrant was therefore invalid. But

> [t]he sufficiency of information obtained from an informant is not to be judged by any rigid test. Generally, probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

(Citation and punctuation omitted.) *Thomas v. State*, 208 Ga. App. 476-477 (1) (430 SE2d 849) (1993).

*Fiallo*, supra at 278, involved a warrantless search and an unnamed confidential informant. Here, in contrast, a warrant was issued and executed, and both informants were named. Furthermore, by giving the pill to the officer and admitting his complicity in Kelly's drug dealing, Richardson implicated himself in several crimes. The other informant similarly gave the officer a statement against his own interest. "When a *named* informant makes a declaration against his interest and based on personal observation, that in itself provides a substantial basis for the magistrate to credit his statement. [Cit.]" (Emphasis in original.) *Wesson*, supra at 791. See also *Graddy*, supra at 102 (2). That principle applies only to "informants whose identities have been disclosed to the magistrate." *Wesson*, supra at 791. Because the reliability and veracity of the named informants were demonstrated, the magistrate did not err in issuing the warrant, and the trial court did not err in denying Kelly's motion to suppress on that basis.

2. Kelly also contends that the warrant was invalid because the officer who swore to the affidavit and obtained the warrant had no personal knowledge of the information included in the affidavit. It is well established, however, that probable cause may rest on the collective knowledge of law enforcement officers when reliable communication exists among them. *Rhine v. State*, 176 Ga. App. 171, 173

(2) (335 SE2d 422) (1985). Here, the officer who swore to the affidavit supporting the warrant communicated more than adequately with the two officers on the scene, and she testified that she relied on the information the two officers at the scene gave her. The trial court did not err in denying the motion to suppress on this basis.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED AUGUST 31, 2004.

*Charles W. Wrinkle*, for appellant.
*Daniel J. Porter, District Attorney, Niria D. Baggett, Assistant District Attorney*, for appellee.