## A05A2190. THE STATE v. HALL.

(624 SE2d 298)

ELLINGTON, Judge.

A Ware County grand jury returned an indictment against Loren Hall for the offenses of possession of cocaine with intent to distribute, OCGA § 16-13-30 (b), and possession of marijuana with intent to distribute, OCGA § 16-13-30 (b). Following a hearing, the trial court granted Hall's motion to suppress evidence seized during police officers' search of Hall's residence. The State appeals and contends that, although the affidavit which supported the issuance of the search warrant may have contained information which was false or unlawfully obtained, the remaining, untainted information justified the issuance of the search warrant. We agree and reverse.

"When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them." (Citation and punctuation omitted.) *State v. Mauerberger*, 270 Ga. App. 794, 795 (608 SE2d 234) (2004). "[W]here the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

Viewed most favorably to uphold the trial court's judgment, which contained no factual findings, the evidence adduced at the hearing on Hall's motion to suppress shows the following. On April 14, 2004, Hall telephoned his landlord, Greg Bennett, to report that the oven in Hall's apartment did not work. The next morning at 8:15 a.m., Bennett sent two maintenance workers to Hall's apartment. Shortly thereafter, Bennett received a telephone call from one of the workers. Bennett went to the apartment and saw a plate in the oven compartment holding baggies filled with what Bennett believed to be crack cocaine. Bennett and the two workers went outside, leaving at least one door to Hall's apartment open, and Bennett called the police.

Bennett took the responding officer inside Hall's apartment to within a couple of feet from the stove, where the officer looked at the

baggies. The responding officer called her sergeant to inform him that there appeared to be crack cocaine in Hall's oven broiler. The sergeant told the responding officer to begin the process for securing a search warrant, but not to enter the apartment. Then the sergeant drove to Hall's apartment. After the sergeant arrived, he went up the stairs to the balcony at the rear of the apartment. The door to the apartment was open, and the sergeant could see the oven, which was less than five feet from the door. The sergeant observed a plate in the oven broiler containing what appeared to be crack cocaine. The sergeant called a police detective, who came to the scene and also observed the suspected cocaine through the open door. The detective left at around 10:00 a.m. to get a search warrant.

The detective prepared an application for a search warrant of Hall's apartment along with a supporting affidavit, and the magistrate issued the warrant based solely on the information contained in the affidavit. The search warrant showed that it was issued at 12:06 p.m., but the detective testified that the warrant was actually issued an hour earlier, and that the search warrant was executed at approximately 11:16 a.m.[1]

The affidavit provided, in pertinent part:

> [O]n 04/15/2004 at 9:00 a.m. w/male Greg Bennett, the owner of the apartment house received 2 calls from [Hall], the tenant of 605 Nichols Street, apartment # 4 reference to the stove needed repairs. Bennett stated upon arrival at said apartment, he entered said apartment to fix the stove. Bennett stated when he pulled open the bottom broiler drawer of the stove he noticed a white ceramic type plate on the rack which contained at least 11 small blue zip lock baggies. Each baggie contained several [off white chunky] solids. Bennett called [the police sergeant]. [The sergeant] sent [the responding officer] to check on the report. [The officer] arrived on the scene and saw the off white chunky

---

[1] Hall argues on appeal that the search of his apartment occurred before the warrant was issued because the warrant showed that it was issued at 12:06 p.m., which was after the time stamp of the photographs taken during the search. However, testimony showed the detective left Hall's apartment to get the warrant at around 10:00 a.m., the warrant was issued at approximately 11:06 a.m., the detective took the first photograph at approximately 11:19 a.m., and he took the last photograph at 11:46 a.m. Furthermore, Hall failed to make an argument as to the timing of the search of his apartment and the issuance of the warrant in the court below, and there is nothing in the record to suggest that the trial court granted the motion to suppress based upon a factual finding that the police conducted their search and seizure before the warrant was issued.

solids. Upon [Affiant's] arrival at the apartment house Affiant looked at the off white chunky solids which [he] tentatively identified as Crack Cocaine. The Crack Cocaine was packaged in a [manner] for distribution. Bennett stated [that Hall] had moved in the apartment house on April 1, 2004. During an independent investigation, [the sergeant] checked the Waycross Police Report files and noticed a incident report where [Hall] was charged on 10/01/1998 for VGCSA [(violating the Georgia Controlled Substances Act)] Possession of Marijuana, VGCSA Trafficking in Cocaine, VGCSA Possession of Cocaine within 1000 feet of Housing Authorities.

As presented to the magistrate, the affidavit shows a fair probability that contraband would be found, since it shows the alleged contraband was seen by Bennett, the affiant, and another officer. See *Christopher v. State*, 190 Ga. App. 393 (1) (379 SE2d 205) (1989) (officer affiant corroborated informant's information through personal observation).

In determining probable cause for a search warrant, the magistrate is merely to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before the magistrate, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Ultimately, this Court's role on review is to determine if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant.

(Citations and punctuation omitted.) *State v. Graddy*, 262 Ga. App. 98 (1) (585 SE2d 147) (2003). Further, "doubtful cases should be resolved in favor of upholding search warrants." *Dearing v. State*, 233 Ga. App. 630, 633 (505 SE2d 485) (1998); see also *Davis v. State*, 266 Ga. 212, 213 (465 SE2d 438) (1996) ("The resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.") (citation and punctuation omitted).

Hall contends that even if the affidavit as presented to the magistrate showed probable cause for issuance of a search warrant, the affidavit was nevertheless insufficient because it contained false and illegally obtained information.

Under *Franks v. Delaware*, 438 U. S. 154 (98 SC 2674, 57 LE2d 667) (1978), if a defendant can show by a preponderance of the evidence that a false statement was made knowingly and intentionally, or with reckless disregard for the truth, by an affiant in the warrant affidavit, then the affidavit's false material must be set to one side, and if the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

(Citations and punctuation omitted.) *Evans v. State*, 263 Ga. App. 572, 574 (2) (a) (588 SE2d 764) (2003). Similarly, if the affidavit submitted to support the search warrant contained unlawfully obtained information in addition to lawfully obtained information, then

the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue. If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admissible.

(Citation omitted.) *Bius v. State*, 254 Ga. App. 634, 638 (4) (563 SE2d 527) (2002).

Hall contends that the officers who observed the suspected cocaine performed an illegal search. The responding officer admitted to entering Hall's apartment before seeing the contraband, and we agree that the responding officer was not entitled to enter Hall's residence under the circumstances shown here. See *Kirsche v. State*, 271 Ga. App. 729, 731 (611 SE2d 64) (2005) ("even if the officers had probable cause to investigate a crime, the Fourth Amendment prohibited them from entering [the suspect's] home or its curtilage without a warrant absent consent or a showing of exigent circumstances") (citations omitted). Although the detective testified that he did not enter Hall's apartment, but only saw the contraband from the doorway, Hall argues that the detective only came to observe the suspected cocaine from outside the apartment because of the responding officer's illegal entry, and the detective's observation was tainted as the "fruit of the poisonous tree." See generally *McKinney v. State*, 261 Ga. App. 218, 219 (2) (582 SE2d 463) (2003) (discussing whether evidence claimed to be the result of a defective search warrant was the fruit of the poisonous tree). Hall further contends that the police sergeant and the detective observed the suspected cocaine from the

curtilage surrounding Hall's apartment, and that "[t]he intrusion by police officers into the curtilage, without probable cause to search or arrest, without a warrant, and without exigent circumstances, rendered the subsequent seizure invalid." (Citations omitted.) *Bunn v. State*, 153 Ga. App. 270, 275 (2) (265 SE2d 88) (1980). We do not need to decide, however, if the police officers' observation of the suspected contraband was illegal, because even if the allegedly illegally obtained information is omitted, the affidavit showed a fair probability that contraband would be found in Hall's apartment.

Without the information gathered from the allegedly unlawful police action, the material portion of the affidavit contained the information relayed to the police by Bennett. Hall contends that some of this information was false because evidence from the hearing showed that the maintenance workers, not Bennett, pulled out the oven rack and discovered the suspected cocaine, that Bennett did not go to the apartment to fix the stove but in response to a call from his maintenance workers, and that Bennett did not telephone the officer named in the affidavit but telephoned instead another officer.[2] Even if false, however, information must be excised from the affidavit for purposes of our review only if the false information was included by the affiant with knowing or reckless disregard for the truth. See *Evans v. State*, 263 Ga. App. at 574 (2) (a). Testimony at the hearing showed Bennett told the responding officer and the sergeant that he had gone to Hall's apartment to fix the stove, and this is the information that was included in the affidavit. Furthermore, Bennett did not testify that he told the police anything different than what the detective included in the affidavit. We conclude that there was no basis for a finding that the detective intentionally or recklessly included false information in the affidavit with regard to Bennett's communications to the police. Even if the allegedly false portions of the affidavit are omitted for purposes of determining probable cause, the material information shows the following: (i) Hall called his landlord, Bennett, because Hall's stove needed repairs, (ii) Bennett entered Hall's apartment, (iii) Bennett saw a plate on the oven rack containing at least 11 small blue ziplock baggies, (iv) each baggie

---

[2] Hall also contends that the portion of the affidavit in which the detective states that there was "now located" at Hall's apartment currency, strongboxes, safes, records, computers, software, and ledgers pertaining to drug activity was an intentional or reckless misrepresentation because the detective had not found any of those things in Hall's apartment at the time he prepared the affidavit. According to the detective, however, he included this standard language in the affidavit because such items are commonly used to facilitate illegal drug sales and he believed such items were present in Hall's apartment. In any case, we have not considered the statement in determining whether the affidavit contained sufficient untainted information to justify the issuance of the warrant.

contained several chunky white solids, and (v) as a result of seeing this material, Bennett called the police.

The issue becomes whether the affidavit's untainted information, which is Bennett's uncorroborated hearsay, was nevertheless sufficient to justify the issuance of the warrant. See, e.g., *Miller v. State*, 219 Ga. App. 213, 216 (2) (464 SE2d 621) (1995) (where the named informant was the victim of the crime, there was no requirement that her reliability be further corroborated in order to show probable cause).

> [T]he sufficiency of information obtained from an informant is not to be judged by any rigid test. Generally, probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

(Citation omitted.) *Kelly v. State*, 269 Ga. App. 377, 380 (1) (604 SE2d 242) (2004).

Applying this test to the affidavit's untainted information, we note the following. The grounds for Bennett's knowledge was strong because he was in the apartment with Hall's permission[3] when he personally observed the suspicious material in the oven immediately before he contacted the police. See *State v. McKendree*, 188 Ga. App. 290, 291 (372 SE2d 673) (1988) (the fact that the informer's tip was based on personal observation as one of the reasons for reversing the trial court's grant of defendant's motion to suppress). The affidavit also showed that Bennett was likely to be a reliable informant. Bennett was named in the warrant, and he was not acting as a confidential informant but as a concerned citizen. See *Lance v. State*, 275 Ga. 11, 20-21 (19) (b) (560 SE2d 663) (2002) (noting that the naming of the witness in an affidavit may offer an additional indicia of reliability); *Davis v. State*, 214 Ga. App. 36, 37 (447 SE2d 68) (1994) (noting that the concerned citizen informer is given a preferred status insofar as testing the credibility of his information). It is undisputed that Bennett was Hall's landlord, which, along with Hall's complaint that his stove needed repairs, provided a reasonable explanation for why Bennett was in Hall's apartment. Although the affidavit does not

---

[3] Although Hall argues that Bennett was acting as an agent of the State when he showed the responding officer the suspected cocaine, there is no evidence to support a finding that Bennett was acting as a State's agent when he first discovered the suspected cocaine and reported the discovery to the police.

explicitly state that Bennett believed the substance in the baggies to be contraband, given the description of the material and the fact that Bennett called the police after seeing it, a common sense interpretation of the facts presented in the affidavit is that Bennett believed the material to be contraband. See *State v. Law,* 208 Ga. App. 744, 745 (432 SE2d 110) (1993) (search warrant affidavit was not insufficient even though it failed to show how the informant knew the substance he saw was a narcotic). Thus, the "totality of the circumstances here included evidence that the informant could be considered a concerned citizen and evidence that the informant saw the contraband at the premises occupied by [Hall]." *Dearing v. State,* 233 Ga. App. at 632-633. It follows that the untainted information contained in the affidavit was sufficient to show probable cause for the issuance of the search warrant, and the trial court erred in granting Hall's motion to suppress. See *State v. McKendree,* 188 Ga. App. at 291.

*Judgment reversed. Smith, P. J., and Adams, J., concur.*

DECIDED DECEMBER 9, 2005.

*Richard E. Currie, District Attorney, Melanie J. Brogdon, Assistant District Attorney,* for appellant.
*John C. Culp,* for appellee.