## A08A0475. MACIAS v. THE STATE.
(664 SE2d 265)

MILLER, Judge.

Following our grant of his application for interlocutory appeal, Javier Macias appeals the trial court's order denying his motion to suppress evidence discovered in the search of his car and residence. For the reasons that follow, we find no error and affirm.

> In reviewing the denial of [Macias's] motion to suppress, we accept the trial court's factual findings and credibility determinations unless clearly erroneous. We construe the evidence in the light most favorable to the trial court's decision and affirm if there is any evidence to support the trial court's findings.

(Citations omitted.) *Mitchell v. State*, 289 Ga. App. 55, 58 (1) (656 SE2d 145) (2007). So viewed, the evidence adduced at the hearing on the motion to suppress shows the following.[1] On the afternoon of March 3, 2005, a Forsyth County sheriff's officer noticed that the driver of a BMW did not appear to be wearing his safety belt, and that the frame around the car's tag obscured the date and month of expiration. The officer initiated a traffic stop of the driver, Macias, who pulled into the parking lot of the Fajita Grill restaurant. When the officer approached the car to ask for Macias's license, he could see that Macias was so nervous that he was shaking. As the officer leaned down, he could smell the odor of marijuana coming from the vehicle, and he noticed that Macias's eyes were bloodshot.

The officer asked Macias to exit the car and stand at the front of the officer's vehicle. He then went back to the open window of

---

[1] In his brief Macias refers to certain evidence, particularly the videotape of the traffic stop, that was introduced at the hearing on motion to suppress as an exhibit but not transmitted to this Court as part of the record on appeal. We note that the hearing transcript, which was filed with the clerk of the superior court and is included as part of the record, states that "all exhibits remain in the custody of the court reporter." "It is appellant's burden to designate what shall be included in the record sent up on appeal," *Doe v. State*, 205 Ga. App. 322, 323 (422 SE2d 558) (1992), and Macias made no specific designation in the notice of appeal that the complete transcript and exhibits, or even the transcript, be included as part of the record on appeal. See *Tempo Carpet Co. v. Collectible Classic Cars of Ga.*, 166 Ga. App. 564 (305 SE2d 26) (1983); OCGA § 5-6-37. Accordingly, Macias cannot rely on the videotape to demonstrate any error by the trial court.

Macias's car and confirmed the smell of marijuana. He also saw a money bag sticking out from underneath the driver's seat. The officer then checked Macias's license and made a call for a backup because he intended to ask for consent to search the car and could not perform a search by himself.

The officer asked Macias if he had been smoking marijuana, and Macias said that he had not. The officer then informed Macias that he was going to give him a warning citation for his tag display and his seat belt violation. As he was completing the citation, the officer asked Macias whether, due to the marijuana smell coming from the vehicle, he could search Macias's car. Macias replied, "Go ahead." The ensuing search revealed approximately 17.5 grams of suspected methamphetamine, almost $3,700 in U. S. currency, and several "ziplock"-type bags.[2]

Later that evening a magistrate issued a search warrant for Macias's residence, where police found an additional 425 grams of suspected methamphetamine. Macias was indicted for trafficking in methamphetamine and possession of methamphetamine with intent to distribute. Macias moved to suppress the evidence found in his car and his residence. Following a hearing, the trial court denied the motion.

1. Macias claims that the trial court erred in finding that the search of his car was valid. He argues that his consent to the search was coerced, and that the officer improperly extended the traffic stop by asking him a series of questions unrelated to the original purpose of the stop. We disagree.

The trial court was entitled to conclude that Macias's consent to search was freely and voluntarily given. See generally *Dean v. State*, 250 Ga. 77, 79 (2) (a) (295 SE2d 306) (1982) ("[w]here the state seeks to justify a warrantless search on grounds of consent, it has the burden of proving that the consent was, in fact, freely and voluntarily given") (citation and punctuation omitted). Testimony at the motion hearing showed that Macias was the co-owner of the Fajita Grill, where the traffic stop took place, and he complains that customers were present during the stop, placing him under undue pressure to resolve the situation by complying with whatever the police wanted. However, Macias chose to pull over into the restaurant parking lot, and he shows no authority for the proposition that the presence of third parties in the area invalidated the consent. The officer testified at the hearing on motion to suppress that he did not coerce or threaten Macias, or promise him anything in return, in order to gain consent to search the car. Macias does not demonstrate

---

[2] No marijuana was uncovered by the search.

otherwise. See *State v. Benjamin*, 266 Ga. App. 205, 207-208 (2) (596 SE2d 623) (2004).

Nor was Macias's consent the product of an unreasonable seizure. Macias complains that the officer asked him questions unrelated to the traffic stop, such as those relating to the ownership and operation of the Fajita Grill restaurant and the cost of detailing the BMW, thus unreasonably extending the duration of the stop. As a rule, there is no Fourth Amendment violation when an officer asks the driver to consent to a search during the course of a valid traffic stop. *Blitch v. State*, 281 Ga. 125, 125-126 (1) (636 SE2d 545) (2006). We have also found, however, that "[a]n officer who questions and detains a suspect for reasons other than those connected with the original purpose of the stop exceeds the scope of permissible investigation unless he has reasonable suspicion of other criminal activity." (Citation and punctuation omitted.) *State v. Gibbons*, 248 Ga. App. 859, 863 (2) (547 SE2d 679) (2001). Nevertheless, "mere police questioning does not constitute a seizure. Unless the detention was prolonged by the questioning, there is no additional seizure within the meaning of the Fourth Amendment." (Citation and punctuation omitted.) *Salmeron v. State*, 280 Ga. 735, 738 (1) (632 SE2d 645) (2006).

In this case, the officer initially detained Macias because of suspected seat belt and tag violations, and he also acquired reasonable suspicion of other criminal activity due to the smell of marijuana coming from Macias's car. See *Williams v. State*, 273 Ga. App. 637, 638-639 (1) (615 SE2d 789) (2005) (odor of marijuana emanating from the interior of a vehicle is indication that vehicle contains illegal contraband). He proceeded to ask questions related to the marijuana, checked whether Macias had a valid license, and then asked Macias to consent to a search while completing a warning citation for the seat belt and the tag violations. Macias does not show that his detention was prolonged so as to become unreasonable merely because, during the course of this lawful investigation, the officer asked Macias several unrelated questions. "A valid ongoing seizure is not rendered 'unreasonable' simply because, during its course, certain unrelated questions, which the detainee is free to decline to answer, are posed to him or her." *Salmeron*, supra at 738 (1). The trial court did not err in denying Macias's motion to suppress evidence seized in the search of his car.

2. Macias also claims that the trial court erred in concluding that the information contained within the affidavit for the search warrant of his residence was sufficient to show probable cause. We disagree.

In deciding whether an affidavit creates sufficient probable cause for the issuance of a warrant, the issuing magistrate or judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

(Citation, punctuation and footnote omitted.) *Copeland v. State*, 273 Ga. App. 850 (1) (a) (616 SE2d 189) (2005). Further, "the trial court may consider oral testimony presented to a magistrate in support of the issuance of a warrant. [Cit.]" *Pettus v. State*, 237 Ga. App. 143, 144 (2) (514 SE2d 901) (1999). The trial court in this case specifically declined to consider any testimony outside the affidavit submitted to the magistrate, noting that it was disputed whether oral testimony was provided to the magistrate, and that the magistrate court had failed to keep a recording of the video conference application hearing as required by OCGA § 17-5-21.1 (e).[3] The trial court considered the following statements contained in the affidavit:

Your affiant is a certified law enforcement officer in this state of Georgia with over 30 years of law enforcement experience and is currently assigned to the Criminal Investigations Division, Narcotics Unit. Your Affiant is tasked to investigate illegal narcotics activity. On this date [a lieutenant] of the Forsyth County Sheriff's Office, Traffic Unit advised that he observed a black, 1997 BMW, . . . and that the driver was not wearing a seat belt, in violation of GA code 40-8-76. [The lieutenant] then performed a traffic stop on the vehicle for the violation and identified the driver as . . . Javier Macias. [The lieutenant] stated that the driver was extremely nervous and fidgety. [The lieutenant] asked the driver where he was coming from and Javier Macias stated that he was coming from his residence and was going to work, Fajitas Grill, where the stop location was at. While issuing a warning citation to Javier Macias, [the lieutenant] asked and received consent to search the vehicle by Javier Macias. [The lieutenant] conducted the search of the vehicle

---

[3] Macias argued below that the absence of the video recording required by OCGA § 17-5-21.1 (e) invalidated the warrant, but has taken the position on appeal that the trial court acted correctly in considering only the "four corners" of the affidavit.

and located 3 zip-loc baggies of Methamphetamines in the ashtray. [The lieutenant] secured Javier Macias and continued the search of the car. [Another officer] then located a larger plastic baggie of Methamphetamines under the passenger side seat. [The lieutenant] located a South Trust money bag under the driver seat containing $3,083.00 in U. S. currency. [The other officer] then located a second South Trust money bag in the glove box and it contained $602 in U. S. currency. The approximate weight of the Methamphetamines was 17.5 grams. It is believed that further illegal narcotics and evidence of this crime are located at the residence of Javier Macias, [in Alpharetta].[4]

(a) We agree with the trial court that the information contained in the affidavit entitled the magistrate to conclude that there was a fair probability that additional contraband and evidence of the crime would be found at Macias's residence. 17.5 grams of methamphetamine, portions of which were packaged in smaller baggies, and approximately $3,700 in cash was found in the car, and so the magistrate had a substantial basis for concluding that Macias did not possess the drugs for personal use. See generally *Helton v. State*, 271 Ga. App. 272, 275 (b) (609 SE2d 200) (2005) (the packaging and the amount of drugs and currency found were relevant to question of possession with intent to distribute). Macias nevertheless claims that there was no nexus between the items sought by the warrant and his residence. "Where the State fails to show any connection between the items sought and the place to be searched . . . there are no reasonable grounds for the search." *State v. Brantley*, 264 Ga. App. 152, 154 (589 SE2d 716) (2003). The affidavit shows, however, that Macias was coming from his residence when the officer initiated the traffic stop. A practical, common-sense conclusion from the information provided by the affiant is that Macias was dealing in methamphetamine, and that he, the drugs, and the money had been at his residence a short time before the traffic stop.

The cases relied on by Macias in support of his argument are factually distinguishable. For example, Macias points out that we have previously noted that "observation of activity that fits a drug traffic pattern" did not amount to probable cause to search a residence. (Punctuation omitted.) *State v. Brown*, 186 Ga. App. 155, 158 (3) (366 SE2d 816) (1988) (physical precedent only). Macias also

---

[4] The affidavit is also part of the exhibits to the hearing transcript that were not transmitted to this Court as part of the appellate record, but there is no dispute as to what the affidavit provided insofar as it was relied on by the trial court, which recited those provisions in its order.

relies on *Shivers v. State*, 258 Ga. App. 253 (573 SE2d 494) (2002), in which we concluded that the presence of the odor of burnt marijuana on the defendant's person, when he was found "out at his house," did not establish probable cause for the issuance of a warrant to search his residence two days later. Id. at 256-258. Unlike *Brown*, the magistrate in this case was not required to rely on any pattern of behavior to conclude that a large quantity of illegal drugs had recently been with Macias at his residence. Unlike *Shivers*, staleness is not an issue,[5] and the amount of drugs and cash recovered indicated a drug-related enterprise and not just personal use, as might be inferred from the smell of a drug on a person's body.[6] Accordingly, we agree with the trial court that the magistrate was entitled to find there was a fair probability that further contraband and evidence of the crime would be found at Macias's residence. See *McClain v. State*, 267 Ga. 378, 388 (11) (477 SE2d 814) (1996) ("[a]n officer's inference that items sought will be at the place to be searched requires no more than 'a fair presumption' to be reasonable") (citation omitted); *Davis v. State of Ga.*, 256 Ga. App. 299, 302 (1) (568 SE2d 161) (2002) (in considering whether there was a nexus between a DeKalb County drug deal and the Cobb County apartment which was the subject of the search warrant, the court noted that it was undisputed that the suspect lived at the apartment). See generally *United States v. Williams*, 974 F2d 480, 481 (4th Cir. 1992) (evidence showed that defendant was a cocaine dealer and that he resided at a motel; the magistrate was entitled to conclude that drug paraphernalia would be found in the motel room); *United States v. Baldwin*, 987 F2d 1432, 1435 (9th Cir. 1993) (recognizing that "in the case of drug dealers, evidence is likely to be found where the dealers live").

(b) Macias also contends that the affidavit, if viewed in the light of *Franks v. Delaware*, 438 U. S. 154 (98 SC 2674, 57 LE2d 667) (1978), is insufficient to support probable cause for issuance of the search warrant. Under *Franks*,

> if a defendant can show by a preponderance of the evidence that a false statement was made knowingly and intentionally, or with reckless disregard for the truth, by an affiant in

---

[5] See id. at 257. It appears from the transcript that Macias was stopped at approximately 4:30 p.m. and the search warrant was issued and the residence secured that evening.

[6] Compare also *State v. Suddeth*, 207 Ga. App. 103, 105 (427 SE2d 76) (1993) (grant of motion to suppress evidence seized in search of a residence affirmed where "[t]he only facts the State possessed as its basis for probable cause at the time it sought issuance of the warrant were that Elaine Suddeth's husband had been in possession of contraband drugs in another county some two weeks prior to the search of the residence, and there was nothing to connect her to that criminal activity").

the warrant affidavit, then the affidavit's false material must be set to one side, and if the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

(Citation and punctuation omitted.) *State v. Hall*, 276 Ga. App. 769, 772 (624 SE2d 298) (2005). We have interpreted *Franks* to extend to an affiant's material omissions. *Redding v. State*, 192 Ga. App. 87, 88-89 (383 SE2d 640) (1989). Thus, the standard is that: "the false statements be deleted, the omitted truthful material be included, and the affidavit be reexamined to determine whether probable cause exists to issue a warrant." Id.

Nothing in the portions of the affidavit expressly considered by the trial court is shown to be false. Macias, however, argues that the affiant omitted exculpatory information by failing to inform the magistrate that he had advised officers that the money found in his vehicle was to be used to pay vendors and patrons in the operation of the restaurant he co-owned as well as to pay for printing of t-shirts for an adjacent car wash facility. He argues that the presence of the currency in his vehicle is therefore "non-probative." We disagree.

Macias fails to show that the affiant's omission of his unverified, self-serving explanations for the large amounts of cash found in his car is material or that the affiant intentionally or recklessly omitted the information from the affidavit. See *Houston v. State*, 242 Ga. App. 114, 115-116 (1) (527 SE2d 619) (2000) (defendant "bore the burden of showing not only that the false and omitted information was material to the determination of probable cause but that any false information given or material information omitted was done so for the purpose of misleading the magistrate") (footnote omitted). Furthermore, even if the affiant's failure to include Macias's explanations for the cash was a material omission, and considering this information as if it had been included in the affidavit, the import of Macias's having recently left his residence in possession of 17.5 grams of methamphetamine and thousands of dollars in U. S. currency remains sufficient to support the issuance of the search warrant. See, e.g., *Carter v. State*, 283 Ga. 76, 78 (2) (656 SE2d 524) (2008) (probable cause to issue warrant remained even if additional facts had been included along with the other facts considered by the magistrate).

For the reasons set forth above, the trial court did not err in denying Macias's motion to suppress.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JUNE 25, 2008 —

*John A. Nuckolls, John Alexander Nuckolls, Jr.,* for appellant.
*Penny A. Penn, District Attorney, James A. Dunn, Assistant District Attorney,* for appellee.