### A09A0012. SAPP v. THE STATE.
(676 SE2d 867)

ELLINGTON, Judge.

Following a bench trial, the Superior Court of Hall County found Bobby Gene Sapp guilty of trafficking in methamphetamine, OCGA § 16-13-31 (e). Sapp appeals from the judgment of conviction, contending that the court erred in denying his motion to suppress. Finding no error, we affirm.

> When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial

---

[4] See *Bussey v. State*, 263 Ga. App. 56, 59 (1) (b) (587 SE2d 134) (2003).

[5] Id.

court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.

(Citation and punctuation omitted.) *Whittle v. State*, 282 Ga. App. 64, 66 (637 SE2d 800) (2006). "[W]here the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, [however,] the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citation omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

At the hearing on the motion to suppress, the only witness to testify was the officer who conducted the traffic stop. The officer testified that his office had received a tip that Sapp would be transporting methamphetamine at an approximate time on a certain day. The officer also testified about the circumstances surrounding his traffic stop and search of Sapp's truck. Following the motion hearing, the trial court issued a comprehensive order denying Sapp's motion to suppress and, in its order, made the following findings of fact:

On the afternoon of August 5, 2005, agents with the Hall County/Gainesville Gang Task Force received information from a known informant of untested reliability about the future behavior of the Defendant, Bobby Gene Sapp. The informant predicted that the Defendant, a white male, would be driving a GMC pickup truck, tan in color, with a distinctive trailer hitch in the shape of a skull that lit up. The informant additionally made it known that Mr. Sapp had been or was currently at his mother's house in the southern part of Hall County, and that he would be traveling on Jim Crow Road.

Acting on this information, the officers, including lead agent Andy Smith, set up surveillance on Stevens Road, roughly one half mile from Jim Crow Road. Approximately fifteen minutes into the surveillance, the officers observed a vehicle and driver matching the informant's description pass along Stevens Road. They then entered the road to follow the vehicle. The left wheels of [the] vehicle were observed crossing the centerline at least twice. Thereafter, the driver of the vehicle failed to use a turn signal at the intersection with Jim Crow Road. After the officers observed these traffic violations and after also turning left onto Jim Crow Road, Agent Smith proceeded to pull over the Defendant using blue lights. Agent Smith and at least

one other officer were driving unmarked police cars with blue lights hidden from normal view.

Thereafter, Agent Smith approached the vehicle and asked the Defendant to step to the rear of the vehicle. The officer told Mr. Sapp that he had pulled him over due to traffic violations and asked for his driver's license. The officer then asked the Defendant if he had anything illegal on his person or in the vehicle. Though Mr. Sapp stated he did not have anything illegal on his person, he acknowledged that he had illegal substances in the vehicle. Agent Smith, acting on this information, asked for and received from Defendant consent to search the vehicle. Agent Nelson then approached the vehicle and saw a drug pipe[1] in plain view on the seat of the vehicle, which was visible without entering the truck's cab. . . . Thereafter, Mr. Sapp was placed under arrest and his truck was searched. The officers then uncovered methamphetamine and digital scales located inside the vehicle.

This Court has reviewed the transcript, and we find that the superior court's findings of fact are supported by evidence presented by the State. Thus, we adopt these findings for the purposes of this appeal. *Whittle v. State*, 282 Ga. App. at 66.

1. Sapp contends that the court erred in finding that the traffic stop was valid and not pretextual. Specifically, he argues that he was not required to use a left turn signal at the intersection because the road on which he was driving ended at the intersection and he had to turn either right or left, so there was no valid basis for the traffic stop. He also complains that the stop was unauthorized because the officers' patrol car was unmarked, in violation of OCGA § 40-8-91.[2]

As the evidence showed, Agent Smith followed Sapp's truck and saw it cross the centerline of the road at least twice before he saw Sapp make a left-hand turn at a "T" intersection without using a turn signal. Consequently, regardless whether Sapp was required to use his turn signal at the intersection, the officer's observation of Sapp illegally crossing the centerline authorized the stop of Sapp's truck. "Since the officer had observed defendant violate a traffic law, the stop did not violate the Fourth Amendment or the Georgia

---

[1] In his appellate brief, Sapp concedes that the pipe was a "methamphetamine pipe."

[2] OCGA § 40-8-91 (a) provides that, except as otherwise provided in the Code section, "any motor vehicle which is used on official business by any person authorized to make arrests for traffic violations in this state, or any municipality or county thereof, shall be distinctly marked on each side and the back with the name of the agency responsible therefor, in letters not less than four inches in height."

Constitution." (Citation omitted.) *Cotton v. State*, 237 Ga. App. 18 (513 SE2d 763) (1999).[3]

Further, Sapp's complaint about the officers' use of an unmarked patrol car is without merit. See OCGA § 40-8-91 (f) ("An otherwise lawful arrest shall not be invalidated or in any manner affected by failure to comply with this Code section."); *Gilbert v. State*, 222 Ga. App. 787 (3) (476 SE2d 39) (1996) (OCGA § 40-8-91 does not invalidate traffic arrests made in unmarked vehicles, nor does it require exclusion of evidence acquired as a result of the stop).

2. Sapp argues that the court erred in finding that he gave a valid consent to search instead of finding that the consent was invalid as the product of an illegal detention. He contends that the detention was patently unreasonable and coercive because an officer retained his driver's license while questioning him, two additional police cars arrived with flashing blue lights, and the officers wore vests marked with "POLICE" in large letters. Based upon the evidence in the record and the court's findings of fact, however, we disagree.

(a) "A valid ongoing seizure is not rendered unreasonable simply because, during its course, certain unrelated questions, which the detainee is free to decline to answer, are posed to him or her." (Citation and punctuation omitted.) *Macias v. State*, 292 Ga. App. 225, 227 (1) (664 SE2d 265) (2008).

> As a rule, there is no Fourth Amendment violation when an officer asks the driver to consent to a search during the course of a valid traffic stop. We have also found, however, that an officer who questions and detains a suspect for reasons other than those connected with the original purpose of the stop exceeds the scope of permissible investigation unless he has reasonable suspicion of other criminal activity. Nevertheless, mere police questioning does not constitute a seizure. Unless the detention was prolonged by the questioning, there is no additional seizure within the meaning of the Fourth Amendment.

(Citations and punctuation omitted.) Id.

---

[3] In *Cotton*, this Court stated that, "[w]hile the trooper acknowledged that he would not have stopped defendant but for the tip that defendant had been smoking a joint, and defendant has argued that the basis for the stop was pretextual, an officer's ulterior motive is of no consequence," because the stop was authorized by the trooper's observation that the defendant was committing a traffic offense. (Citation omitted.) 237 Ga. App. at 18. See also *Whren v. United States*, 517 U. S. 806, 813 (II) (A) (116 SC 1769, 135 LE2d 89) (1996) (in finding that a traffic stop following an officer's observation of a traffic violation was authorized, the Court noted that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

As shown above, prior to the traffic stop, the officers had received a tip that Sapp would be transporting methamphetamine later that day, would be following a specific route, and would be driving a distinctive vehicle. After conducting the traffic stop, an officer asked Sapp to step to the rear of the truck and asked for his name and driver's license. The officer then asked if Sapp had anything illegal on his person or in his truck, and Sapp responded that he had an illegal substance in his truck. When the officer asked for permission to search the vehicle, Sapp consented. Under these circumstances, the trial court was authorized to find that the officers "diligently and swiftly confirmed their suspicions" and that the detention and questioning of Sapp was not unreasonably lengthy in violation of Sapp's constitutional rights. Thus, the evidence does not support Sapp's claim that his consent to search was involuntary because it was the result of an illegal detention.

(b) Further, pretermitting whether Sapp gave a valid consent to search, the evidence also shows that, while the officers were questioning Sapp, one officer was able to see into the truck and observed a drug pipe in plain view on the seat of the truck's cab. Thus, after observing the pipe, the officers had probable cause to arrest Sapp, search the truck, and seize the methamphetamine and digital scales.

> The plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer only if the officer's *access* to the object itself has some prior Fourth Amendment justification. A police officer may only seize what is in plain sight, if he is in a place where he is constitutionally entitled to be.

(Citation and punctuation omitted; emphasis in original.) *Bogan v. State*, 270 Ga. App. 162, 164 (1) (605 SE2d 872) (2004). Because the officer in this case was constitutionally entitled to stand outside the truck and look inside the cab during the brief detention and investigation and could observe the drug pipe from that vantage, the officers had probable cause to arrest Sapp, search the truck, and seize the methamphetamine and scales. Id. Therefore, the trial court did not err in denying Sapp's motion to suppress.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 31, 2009.

*Larry L. Duttweiler*, for appellant.

*Lee Darragh, District Attorney, Wanda L. Vance, Assistant District Attorney*, for appellee.