**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 5, 2017**

# In the Court of Appeals of Georgia

A17A0317. BATTEN v. THE STATE.

BETHEL, Judge.

Jesse Lamar Batten appeals from the denial of his motion for a new trial. He argues that the trial court erred in denying his motions to suppress and in admitting certain statements that he made to law enforcement officers. We disagree and affirm because the trial court did not err in denying the motions.

Following a conviction, we view the evidence "in the light most favorable to support the verdict," and the defendant "no longer enjoys a presumption of innocence." *Everhart v. State*, 337 Ga. App. 348, 348 (786 SE2d 866) (2016) (quoting *Culver v. State*, 230 Ga. App. 224, 224 (496 SE2d 292) (1998)). So viewed,

the evidence[1] shows that the Ben Hill County Sheriff's Office and the Georgia Bureau of Investigation ("GBI") placed a tracking device[2] on Batten's vehicle as part of their investigation into Batten's drug distribution activities. On December 4, 2013, the vehicle tracker indicated that Batten had stopped at several locations associated with the distribution of narcotics. The tracker went dead during Batten's return trip home, and the GBI investigator monitoring Batten's activities conducted surveillance on the interstate to look for Batten's vehicle. The investigator observed Batten's vehicle and began following him, while informing the Sheriff's office of his whereabouts. Investigators from the Sheriff's office continued to follow Batten and conducted surveillance as he stopped first at the house of an associate who investigators believed may have also been involved in the distribution of methamphetamine, and later at an apartment complex. One of the investigators continued to follow Batten as he left the complex and drove into Ben Hill County. Shortly after crossing the county line, the investigator observed Batten cross the center line and decided to activate his

---

[1] In reviewing the denial of a motion to suppress, we may consider both the transcript of the motion hearing and the trial transcript. *Davidson v. State*, 257 Ga. App. 260, 261 (570 SE2d 698) (2002).

[2] Installation of the tracking device had been approved by a judge.

2

lights and stop Batten out of concern that he may have been under the influence.[3] An officer in a marked patrol car assisted in the stop. The investigator instructed Batten to step out of his vehicle, requested identification[4] and proof of insurance, and asked whether Batten had anything illegal in the vehicle, which Batten denied. Another officer asked Batten if he had "a problem with [the officer] searching [Batten's] truck?" Batten replied, "No, go ahead." After officers discovered methamphetamine hidden in a box under the vehicle, Batten was placed in handcuffs.

Batten spoke with police while handcuffed, and officers admit that he had not been informed of his *Miranda* rights; however, the State did not introduce these statements at trial. Batten was not taken into custody following the stop, but came into the Sheriff's office the next day to be interviewed regarding his drug distribution activity. Batten was informed of his *Miranda* rights prior to that interview, and he signed a form acknowledging them. During that interview, which was later played for the jury, Batten admitted to hiding methamphetamine in a box hidden under his vehicle. Batten was arrested sometime later.

---

[3] During cross-examination, the officer admitted that he did not include his observation of Batten's traffic offense in his written report.

[4] The officer obtained Batten's identification from the vehicle for him.

Prior to trial, Batten filed a motion to suppress evidence arising from the stop, arguing that officers lacked probable cause to stop Batten, and that Batten did not consent to the search of his vehicle. Batten also moved to suppress his statements made to police because he was not informed of his *Miranda* rights. The trial court denied these motions.

A jury found Batten guilty of trafficking in methamphetamine and operating a vehicle containing a secret compartment. Batten filed a motion for a new trial, which the trial court denied following a hearing. This appeal followed.

Batten argues that the trial court erred in denying his motions to suppress.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of the witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

*Johnson v. State*, 305 Ga. App. 635, 636 (700 SE2d 612) (2010) (citation omitted). Because the relevant facts here are undisputed, we review the trial court's ruling de novo.

(a) Batten first argues that he did not consent to a search of his vehicle, but merely acquiesced to the authority of the police. Batten argues that there were several police officers present, some of whom were shining flashlights, and that the State did not meet its burden in establishing that consent was freely and voluntarily given. Batten is correct that the State "has the burden of proving the validity of a consensual search and must show the consent is given voluntarily." *State v. Jourdan*, 264 Ga. App. 118, 120 (1) (589 SE2d 682) (2003) (citation and punctuation omitted). "Consent which is the product of coercion or deceit on the part of the police is invalid. Consent is not voluntary when it is the result of duress or coercion, express or implied." *Id.* at 121 (1) (citations and punctuation omitted).

> The voluntariness of consent is determined by the totality of the circumstances; no single factor controls. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect. The appropriate inquiry is whether a reasonable person would feel free to decline the officers' request to search or otherwise terminate the encounter. Mere acquiescence to the authority asserted by a police officer cannot substitute for free consent. And, we are required to scrutinize closely an alleged consent to search.

*Id.* (internal citations and punctuation omitted).

5

Even though there were several police officers present during the stop holding flashlights (as it was dark), the videotape of the traffic stop corroborates the officers' testimony regarding the consensual nature of the search yielding the methamphetamine sought to be suppressed. *See Morris v. State*, 239 Ga. App. 100, 101 (1) (520 SE2d 485) (1999) (consent voluntary where officer asked the defendant if he minded if the officer examined a matchbox, and the defended responded "no, go ahead."). Batten was not in handcuffs prior to the search, and there is no evidence that he was being threatened in any way, that he was misled, or that he was subject to a lengthy detention before giving his consent to search. *See Kendrick v. State*, 335 Ga. App. 766, 769 (782 SE2d 842) (2016) ("A consent to search will normally be held voluntary if the totality of the circumstances fails to show that the officers used fear, intimidation, threat of physical punishment, or lengthy detention to obtain the consent." (citation omitted)); *State v. Westmoreland*, 204 Ga. App. 312, 313-14 (2) (418 SE2d 822) (1992) (consent was just acquiescence where defendant consented to search only after an officer told him that the officer did not need a warrant). Moreover, the mere fact that four officers were present and holding flashlights when Batten was asked for permission to search his vehicle does not mean that his consent was merely an acquiescence to their authority. *See Smith v. State*, 165 Ga. App. 333,

6

334-35 (2) (299 SE2d 891) (1983) (consent voluntary where defendant was initially ordered out of his car at gunpoint, but police were no longer pointing weapons at him when he was asked for permission to search his vehicle). Rather, the officers testified that Batten was asked whether he would consent, and he did so. *Compare Hollenback v. State*, 289 Ga. App. 516, 519 (657 SE2d 884) (2008) (consent was not freely and voluntarily given and was mere acquiescence to authority where the officer informed the defendant he was going to search her vehicle and she did not object, but handed the officer her keys). Once "voluntary consent is legally obtained, it continues until it either is revoked or withdrawn." *Morris*, 239 Ga. App. at 101 (1) (a) (citation omitted). There is no evidence either occurred here. Therefore, we agree with the trial court that the search was consensual.

(b) Batten next argues that the stop was unlawful under OCGA § 40-8-91 because an investigator conducted the traffic stop in an unmarked vehicle. OCGA § 40-8-91 (a) requires that any vehicle used to make arrests for traffic violations to be "distinctly marked on each side and the back with the name of the agency responsible[.]" But Batten failed to raise this argument below, and cannot make it for

the first time on appeal.[5] *See West v. State*, 300 Ga. App. 583, 585 (2) (685 SE2d 486) (2009) ("Issues and objections not raised in the trial court and ruled on by the trial court are deemed waived and cannot be raised for the first time on appeal." (footnote omitted)). We find no error here.

(c) Batten further argues that as a result of his allegedly illegal arrest, any statements he subsequently provided to police were tainted and inadmissible. More specifically, in his enumeration of error, Batten argues the trial court erred in allowing the jury to hear his statements made to police during his interview at the

---

[5] Even if Batten had not waived this argument, it would still fail because OCGA § 40-8-91 (f) provides that "[a]n otherwise lawful arrest shall not be invalidated or in any manner affected by failure to comply with this Code section." *See also State v. Carter*, 215 Ga. App. 647, 648 (451 SE2d 541) (1994) (reversing grant of motion to suppress despite failure to comply with OCGA § 40-8-91 where officers pulled defendant over in an unmarked car after observing him crossing the centerline several times). Further, because of Batten's erratic driving and the officer's concerns about Batten's potential impairment, the officer was authorized to stop him even in an unmarked vehicle. *See Thomas v. State*, 261 Ga. App. 493, 497 (2) (b) (583 SE2d 207) (2003) ("nothing in [OCGA § 40-8-91] . . . invalidates traffic arrests, or investigatory stops, made in an unmarked vehicle[,]" and "an officer in an unmarked car may stop an erratic driver"); *Sapp v. State*, 297 Ga. App. 218, 220-21 (1) (676 SE2d 867) (2009) (stop by an officer in an unmarked vehicle was not unlawful where officer observed defendant's vehicle cross the centerline); *Carter*, 215 Ga. App. at 648. Additionally, the record indicates that an officer in a marked patrol car also effected the stop simultaneously with the unmarked vehicle.

Sheriff's office.[6] Batten fails to support this particular enumeration with any argument or authority in his brief, which is contrary to the requirements of this Court's rules. *See* Court of Appeals Rule 25 (a) (3). Batten's failure to support his assertion of error with any authority hinders our ability to determine the substance of his argument on appeal. As our rules make clear, "[a]ny enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned." Court of Appeals Rule 25 (c) (2); *Hafeez v. State*, 339 Ga. App. 467, 470 (2) (793 SE2d 632) (2016) (defendant abandoned his enumeration of error because he made no argument in support of it). Therefore, because Batten abandoned this error on appeal, we will not address it.

*Judgment affirmed. McFadden, P. J., and Branch, J., concur.*

---

[6] The State did not seek to introduce at trial any of the statements Batten made to police during the stop.