**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4748**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JERMARL ALBERT JONES, a/k/a Jamal Miles,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore.   Catherine C. Blake, District Judge. (1:06-cr-00057-CCB-3)

Argued:  March 24, 2009                 Decided:  October 5, 2009

Before WILKINSON, Circuit Judge, Eugene E. SILER, Jr., Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation, and Robert J. CONRAD, Jr., Chief United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed by unpublished opinion.   Judge Conrad wrote the opinion, in which Judge Wilkinson and Senior Judge Siler joined.

**ARGUED:** Lisa Jo Sansone, Baltimore, Maryland, for Appellant. Philip S. Jackson, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

CONRAD, Chief District Judge:

Jermarl Albert Jones ("Jones") appeals a conviction for conspiracy to possess with intent to distribute heroin in Baltimore, Maryland. He challenges the district court's denial of his motion to suppress evidence from his arrest and the executions of search warrants at two apartments. He also disputes two evidentiary rulings during his trial, which he claims unfairly permitted the jury to know his criminal history. Finally, he asserts that the evidence presented at trial was insufficient to support the jury's guilty verdict. For the reasons that follow, we affirm.

## I. Motion to Suppress

A district court's ruling on a motion to suppress is reviewed for clear error on factual findings and de novo on legal determinations. United States v. Cain, 524 F.3d 477, 481 (4th Cir. 2008). Facts are viewed in the light most favorable to the prevailing party, United States v. Jamison, 509 F.3d 623, 628 (4th Cir. 2007), and great deference is shown to the district court's findings of probable cause, Illinois v. Gates, 462 U.S. 213, 236 (1983).

A. Arrest at Breezy Tree Court Apartments

The Fourth Amendment allows an individual to be arrested without a warrant if such action is supported by probable cause. United States v. Watson, 423 U.S. 411, 424 (1976). The probable-cause standard depends on the totality of the circumstances, viewed from the standpoint of an objectively reasonable police officer, leading to the belief that an individual has committed or is committing a crime. Maryland v. Pringle, 540 U.S. 366, 370-71 (2003).

Jones argues that he was innocently in a public place and that there was no evidence to link him to criminal activity at the apartment where he was arrested. Our review of the record, however, reveals substantial evidence supporting the district court's conclusion that Jones was arrested with probable cause.

The district court found that Patrol Officer Kevin Fisher of the Baltimore County Police Department responded to a loud-music complaint for Apartment H at 10 Breezy Tree Court. He entered the apartment with the assistance of the property manager and observed a stash house, that is an apartment with very little furniture and very little kitchen equipment, except what would be suitable for a drug operation. Upon executing a search warrant there, Vice and Narcotics Detective Joseph Blake and other law enforcement agents found a very substantial and

4

valuable quantity of drugs, drug-cutting material, scales, a colander, baggies, gel caps, and drug residue showing the apartment was being used for an ongoing drug operation.

Additionally, the court found that neighbors had reported to the police that one or more African-American males would arrive at the apartment in the evening in a Jeep Cherokee. On the date in question, Jones and another African-American male arrived at the apartment at 10 p.m. in a Jeep Cherokee. When they arrived at the apartment's door, the other person inserted a key into the lock and opened the door. Before they could completely enter the apartment, they were confronted by police officers and arrested. These factual findings are amply supported by the record of the suppression hearing. Indeed, Jones does not dispute the facts, but rather the conclusion that they established probable cause for his arrest.

In Pringle, the Supreme Court found probable cause for the arrest of the front-seat passenger in a car where police found baggies of cocaine found behind the back-seat armrest and a roll of cash in the glove compartment. 540 U.S. at 371-72. The Court held that it was reasonable to infer that Pringle was involved in the criminal activity based on his equal access to the controlled substance and cash. Id. at 372. The Court also noted that a dealer would not likely allow an innocent person

5

into a relatively small automobile with drugs and proceeds because that person could then report the crime. Id. at 373. Thus, the Court distinguished Pringle from the public tavern patron in Ybarra v. Illinois, 444 U.S. 85 (1979), who was unlawfully searched when there was probable cause to search only the bartender and the tavern itself. Pringle, 540 U.S. at 373 (citing Wyoming v. Houghton, 526 U.S. 295 (1999) (car passenger is often engaged in common enterprise with driver with same interest in concealing crime)).

Here, Jones's attempt to align himself with Ybarra by asserting he was innocently in a public place when arrested is unavailing. He arrived at a privately leased apartment in the same type of vehicle at the same time as neighbors had seen there previously. The defendant's companion, later identified as Calvin Wright, unlocked the apartment door with a key. The defendant was in the process of entering when he was confronted by police. The drug operation inside was obvious, based on the absence of furniture and the presence of drug-trafficking materials, and makes it unlikely that an uninvolved person would be granted access for fear he might report the criminal activity. As in Pringle, it was entirely reasonable for the officers to infer that Jones was part of that felonious criminal

6

activity.  Therefore, the district court properly concluded that his warrantless arrest did not violate the Fourth Amendment.

### B. Search of Thistledown Apartment

The Fourth Amendment also allows a residence to be searched with a warrant supported by probable cause.  An issuing magistrate must make "a practical, common-sense decision" based on the facts in the affidavit that "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  A reviewing court considers whether the magistrate had a substantial basis for finding probable cause and great deference is shown to the magistrate's conclusion.  United States v. Hodge, 354 F.3d 305, 309 (4th Cir. 2004)(citing Gates, 462 U.S. at 238-39).

Jones argues that information from the confidential informant was insufficient and that Jones's presence at the Breezy Tree Court apartment did not justify a search of his residence on Thistledown Road.  Our review of the affidavit finds a substantial basis for the issuance of the warrant and a sufficient connection between the unlawful activity at Breezy Tree Court and Jones's residence to approve its search.

7

The affidavit presented to the issuing magistrate contained information from a confidential informant given to police within a month before Jones's June 19, 2002 arrest. Over an eight-month period, the informant had provided information leading to the execution of search warrants and the discovery of large quantities of controlled substances and guns. Specifically, in the middle of May 2002, the informant provided information about the "Red Dot" heroin organization's use of 1608 Clifton Street as a stash house. When police executed a search warrant there, they found heroin, marijuana, a gun, and currency and arrested three individuals, including Calvin Wright.

The informant also identified other alleged members of the Red Dot organization. He knew Jermarl Jones as "Marty" and accurately reported that Jones had been arrested with a Red Dot co-conspirator in 2001. He knew Johnnie Butler as "Junior," who was the registered owner of a van at 1608 Clifton Street and the Jeep Cherokee in which Jones arrived at Breezy Tree Court. Officers found a key to the Breezy Tree Court apartment on Butler the night Jones was arrested there. Therefore, the reliability of the informant's linking Jones with heroin distribution through Red Dot is established in the affidavit.

In addition to providing information about Jones's arrest at Breezy Tree Court with Calvin Wright and the drug operation

8

occurring there, the detectives seeking the warrant swore that they were aware that drug dealers often store narcotics, weapons, proceeds, and records of their trafficking in their residences for safe keeping. Jones's address listed on his license and vehicle registration, as well as surveillance on the date of his arrest, supported a reasonable belief that Thistledown Road Apartment 473 was Jones's residence.

Thus, we find that information in the affidavit provided a substantial basis for the magistrate to conclude that there was probable cause to believe that contraband or evidence of a crime would be found at Jones's residence on Thistledown Road. In United States v. Severance, 394 F.3d 222, 230 (4th Cir.), vacated on Booker grounds, 544 U.S. 1047 (2005), this Court reached a similar conclusion where a defendant was arrested in his vehicle for possessing cocaine and the affidavit demonstrated a strong connection between him and the apartment to be searched. We recognized that "'the nexus between the place to be searched and the items to be seized may be established by the nature of the items and the normal inferences of where one would likely keep such evidence.'" Id. (quoting United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993)); see also United States v. Williams, 974 F.2d 480, 481-82 (4th

Cir. 1992)(finding fair probability that drug paraphernalia would be found in motel room of known drug dealer).

Here, the affidavit contains sufficient information to suspect Jones's involvement in heroin distribution as part of the Red Dot organization. It also clearly establishes the apartment at Thistledown Road as his residence. The detectives swore that they were aware that drug dealers often store evidence of their trafficking and weapons at their residences. Therefore, substantial evidence in the affidavit supports the magistrate's determination that there was probable cause to search Jones's apartment.

### C. Search of Rudisill Court Apartment

Jones argues that the affidavit did not establish probable cause for the search of his girlfriend's apartment in Rudisill Court. In addition to the information also presented in the affidavit for the Thistledown Road search warrant, the affidavit for the Rudisill Court search warrant contained information about Jones's relationship with Felicia Covel. An informant provided a cell phone number used by Jones, which was listed to Covel at the Thistledown Road address. While police were executing the search warrant at the Thistledown Road apartment, Covel arrived and told them that she dated Jones. She said she

resided in an apartment at 7047 Rudisill Court and would consent to its search. She asked the detectives to meet her there after 5 p.m. because she needed to return to work.

Instead of returning to work, Covel drove immediately to Rudisill Court where detectives intercepted her and kept her from entering the apartment while a search warrant was obtained. Other detectives who sought the warrant swore that drug dealers commonly store controlled substances and conceal proceeds at their girlfriends' residences to avoid detection by police and rival dealers. The detectives believed Covel was seeking to remove or destroy evidence inside Rudisill Court based on her false statement that she was returning to work after she left Thistledown Road.

This information provided a substantial basis for the magistrate to conclude there was a fair probability that contraband or evidence of a crime would be found in the Rudisill Court apartment. Covel's statements connected herself to Jones and the apartment, and her actions were reasonably interpreted as an attempt to conceal illegal items from police. Accordingly, we affirm the finding of probable cause to search the Rudisill Court apartment.

11

## II. Evidentiary Rulings

Jones claims the district court erred regarding the trial testimony of two police officers who allegedly informed the jury about Jones's criminal history.

### A. Testimony of Officer Fisher

Trial courts are afforded broad discretion on evidentiary rulings and will not be overturned except in the most extraordinary circumstances. United States v. Rosen, 557 F.3d 192, 199 (4th Cir. 2009). Jones did not object after the challenged testimony; in fact, counsel cross-examined Officer Fisher on the subject about which he now complains. Accordingly, the Court reviews the district court's action for plain error, which must affect substantial rights to warrant correction. United States v. Olano, 507 U.S. 725, 731-32 (1993).

Our review of the record discloses no error by the district court regarding the testimony of Officer Fisher. The challenged portion came when Officer Fisher was attempting to explain why the evidence seized from Breezy Tree Court in 2002 was no longer available to present to the jury in 2008. After he described letters sent by the police department's evidence management unit

to officers on old cases asking whether evidence needed to be preserved, the following exchange occurred:

> OFFICER FISHER: When I got one of those letters, because the case was so old, I believe it was four years old at that point, four or five years old, I was under the impression that the defendants had already –

> MR. NEEDLEMAN: Objection.

> THE COURT: Well, right.

> MR. JACKSON: Yeah. Thank you.

> THE COURT: Don't worry about what was your impression. What did you do at that point in response to that letter?

> OFFICER FISHER: I had the evidence destroyed.

(JA 238-39). Jones's counsel did not object to Officer Fisher's testimony. During cross-examination, counsel attempted to establish that the prior state prosecution had been nolle prossed.

Jones now argues that Officer Fisher's testimony implied that Jones and his co-defendants had been convicted of the same charges in state court. This argument reads too much into this limited exchange that was fairly begun to explain the absence of physical evidence from Breezy Tree Court. Officer Fisher's words do not hint at a state court prosecution, much less a resulting criminal conviction. There is no basis to conclude that the jury drew any prejudicial conclusions from the

13

interrupted response from which the government promptly moved on to another topic. Additionally, the jury was later instructed not to consider or speculate about state charges. Accordingly, we find that the defendant has failed to carry his burden to show plain error regarding Officer Fisher's testimony.

## B. Testimony of Det. Walsh

Next, Jones claims the district court should have struck the testimony of Det. Walsh about Jones's use of another name in 2001. Counsel objected at the time and accepted the trial court's curative instruction. Jones now claims that the testimony constituted inadmissible "other crimes" evidence governed by FED. R. EVID. 404(b). Again, the defendant's argument puts words in the mouth of the detective that were never heard by the jury.

Det. Blake had testified that he found three pieces of identification in the Jeep Cherokee Jones exited at Breezy Tree Court in 2002. Two bore the name of "Jermarl Miles" and the other "Jermarl Jones." Det. Blake testified that Jones used the name "Jamal Miles" at booking. During the booking process, Det. Walsh arrived at the precinct station and recognized Jones. Det. Walsh testified as follows:

14

MR. JACKSON: Had you previously encountered this defendant before?

DET. WALSH: Yes, sir, back in 2001.

MR. JACKSON: Had he identified himself to you at that prior encounter?

DET. WALSH: Yes, as Jermarl Jones.

(JA 321-22). Jones's counsel asked that the testimony be stricken on the basis that it informed the jury about a previous arrest. The court disagreed, but offered to give a curative instruction, which counsel accepted.

The court then instructed the jury as follows:

THE COURT: We're just clarifying. The reference to 2001, ladies and gentlemen, has nothing to do with this case, and there is no suggestion that it involved any wrongdoing on Mr. Jones's part at all. It is simply a previous opportunity that the two people had to speak, and that's all.

(JA 324).

Det. Walsh's testimony was properly offered to establish that Jones gave police an alias following his arrest at Breezy Tree Court. See United States v. Burgos, 94 F.3d 849, 872 (4th Cir. 1996)("Employing an alias and attempting to conceal identity reinforces the conclusion of the existence of a conspiracy."). The prosecutor's question was appropriately limited to asking whether the detective had "previously encountered" Jones, and the detective responded without

15

elaboration. Any remote risk that the jury would draw a prejudicial inference from the exchange was alleviated by the district court's curative instruction. United States v. Johnson, 114 F.3d 435, 444 (4th Cir. 1997)(absent extreme circumstances, juries are presumed to follow instructions to disregard potentially prejudicial evidence). Jones has not shown this was an extraordinary circumstance that requires us to overturn the district court's evidentiary ruling.

## III. Sufficiency of the Evidence

Finally, Jones challenges the sufficiency of the evidence presented at trial. In resolving issues of sufficiency of the evidence, this Court does not reassess the fact finder's determination of witness credibility. United States v. Sun, 278 F.3d 302, 313 (4th Cir. 2002). Jones's jury conviction must be sustained if, taking the view most favorable to the Government, there is substantial evidence to support the verdict. Glasser v. United States, 315 U.S. 60, 80 (1942). Substantial evidence is evidence that a rational trier of fact could have found adequate and sufficient to establish the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Reversal is reserved for cases where the

prosecution's failure to produce such evidence is clear.  United States v. Jones, 735 F.2d 785, 791 (4th Cir. 1984).

The elements of a conspiracy to possess with intent to deliver a controlled substance under 21 U.S.C. § 846 are "(1) an agreement between two or more persons to violate federal law relating to controlled substances; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement therein; and (4) interdependence among the conspirators."  United States v. Hall, 551 F.3d 257, 268 n.13 (4th Cir. 2009). Jones does not dispute that there was a criminal conspiracy at work in relation to the seized heroin. Rather, he argues that there was insufficient evidence showing his involvement in the conspiracy.

When the evidence is viewed in the light most favorable to the Government, a reasonable jury could find that the Government proved all the necessary elements beyond a reasonable doubt, including Jones's participation in the conspiracy.  Jones was present at an apartment obviously used in packaging heroin for distribution.  When confronted by police there, he attempted to flee and gave an alias and a false address.  He possessed several forms of identification with various names and birthdates.  Following his initial arrest on state charges, Jones lived for months in a hotel room listed in the same name

17

as the stash-house apartment lease. Therefore, there was sufficient evidence to connect Jones to the drug operation at the Breezy Tree Apartment.

Additionally, evidence located at Jones's Thistledown Road apartment and his girlfriend's Rudisill Court apartment further supports the jury's verdict. In those locations, police found items tending to show participation in drug trafficking, including large amounts of currency, a money counter, a loaded handgun, and additional identification documents in different names. Accordingly, the jury had before it evidence from which it could rationally conclude beyond a reasonable doubt that Jones was involved in the charged narcotics conspiracy.

## IV. Conclusion

For the reasons stated herein, the judgment of the district court is

<u>AFFIRMED</u>.

18