**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 18, 2016**

# In the Court of Appeals of Georgia

A16A0614. CREAMER v. THE STATE.

DILLARD, Judge.

We granted Tyrone Creamer's application for interlocutory review of the trial court's denial of his motion to suppress evidence that was discovered during a search of his home. In two separate enumerations of error, Creamer argues that there was insufficient probable cause to support the issuance of the warrant to search his home. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the trial court's ruling,[1] the evidence shows that on March 11, 2015, an investigator with the Atlanta Police Department's narcotics unit received an anonymous tip that a man was selling marijuana from a

---

[1] *See, e.g.*, *Christian v. State*, 329 Ga. App. 244, 245 (1) (764 SE2d 573) (2014).

residence located at 3248 Ward Drive (the "Ward Drive residence"). Later that same day, a confidential informant ("CI"), who was "very reliable" and who had "helped the City of Atlanta's narcotics unit on numerous occasions resulting in numerous successful narcotics related search warrants and arrests," went to the Ward Drive residence to attempt to purchase marijuana.[2] Upon her arrival, the CI walked up to the door of the residence and asked the man who answered the door (later identified as "Dred") for $40 worth of marijuana. Dred advised the CI that he had left the marijuana in his car, and he then walked across the street to a silver vehicle that was parked directly in front of the residence to retrieve it. When he returned from the car, the man sold the CI approximately .272 grams of marijuana for $40.

On March 19, 2015, the CI went to the Ward Drive residence a second time to purchase marijuana. Upon arriving at the residence, the CI was again greeted by Dred, who agreed to sell her the drugs. As with the first transaction, Dred "stepped off the porch" of the residence, walked across the street, and retrieved the marijuana from the same silver car. Dred then returned to the front porch of the Ward Drive residence and sold the CI 1.9 grams of marijuana for $20.

---

[2] At the suppression hearing, the investigator testified that, although the CI was later terminated from the City of Atlanta for stealing, she was considered reliable at the time of the controlled purchases at issue in this case.

Based on the foregoing, the investigator applied for and obtained a search warrant for the Ward Drive residence. And when the investigator and his team arrived to execute the search warrant, they encountered Creamer, who indicated that he lived in the basement of the home. During the ensuing search of the basement, the investigator discovered approximately 40.2 grams of marijuana; a digital scale; multiple packs of small bags, which are commonly used to package and sell narcotics; and mail addressed to Creamer.

Thereafter, Creamer was charged, via accusation, with possession of marijuana with intent to distribute.[3] Prior to trial, Creamer filed a motion to suppress the evidence discovered at the Ward Drive residence, arguing that there was insufficient probable cause to support the issuance of the search warrant. And after a hearing on the matter, the trial court denied the motion in a summary order. Creamer then filed a petition for a certificate of immediate review, which the trial court granted. We then granted his application for an interlocutory appeal. This appeal follows.

At the outset, we note that in considering a trial court's denial of a motion to suppress, we construe the evidence "in favor of the court's ruling, and we review de

---

[3] *See* OCGA § 16-13-30.

3

novo the trial court's application of the law to undisputed facts."[4] Further, in accordance with the Fourth Amendment to the United States Constitution,[5] a search warrant in Georgia may issue only upon "facts sufficient to show probable cause that a crime is being committed or has been committed."[6] And in determining whether probable cause exists, the judge issuing the warrant is required simply to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence

---

[4] *Minor v. State*, 298 Ga. App. 391, 392 (680 SE2d 459) (2009) (punctuation omitted).

[5] *See* U.S. CONST. amend IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *see also* GA. CONST. art. 1, § 1, ¶ XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the person or things to be seized.").

[6] *State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009); *see also* OCGA § 17-5-21 (a).

4

of a crime will be found in a particular place."[7] Further, in reviewing the validity of a search warrant, this Court is charged with "ensuring—considering the totality of the circumstances and giving substantial deference to the issuing judge's decision—that the judge had a 'substantial basis' for concluding that probable cause existed."[8] Indeed, even doubtful cases should be "resolved in favor of upholding a magistrate's determination that a warrant is proper."[9] Bearing these guiding principles in mind, we turn now to Creamer's specific claims of error.

1. Creamer first contends that there was an insufficient nexus between his residence and the illegal activity to establish probable cause because the drugs were sold out of a vehicle, not the residence. We disagree.

Creamer is indeed correct that when the State "fails to show any connection between the items sought and the place to be searched there are no reasonable

---

[7] *Palmer*, 285 Ga. at 77 (punctuation omitted); *see also DeYoung v. State*, 268 Ga. 780, 787 (7) (493 SE2d 157) (1997).

[8] *Manzione v. State*, 312 Ga. App. 638, 640 (719 SE2d 533) (2011); *see also Whitten v. State,* 174 Ga. App. 867, 868 (1) (331 SE2d 912) (1985); *Illinois v. Gates*, 462 U.S. 213, 238 (III) (103 SCt 2317, 76 LEd2d 527) (1983).

[9] *Palmer*, 285 Ga. at 79 (punctuation omitted); *see also Sullivan v. State*, 284 Ga. 358, 361 (667 SE2d 32) (2008) (same).

5

grounds for the search."[10] Nevertheless, an officer's inference that "items sought will be at the place to be searched requires no more than 'a fair presumption' to be reasonable."[11] And here, a reliable CI purchased marijuana twice from an individual who greeted her at the front door of the Ward Drive residence. And while the seller did retrieve the drugs (which were prepackaged for sale) from his car, both sales took place at the *entryway* of the residence. Moreover, while the prepackaged drugs were retrieved from a vehicle, the original anonymous tip—which was later corroborated by the CI—was that drugs were being sold *from the residence*. Under these particular circumstances, the investigator could have made a "fair presumption" that evidence of drug dealing, such as larger quantities of marijuana along with packaging materials or scales, could be found inside the residence where the drug-dealer appeared to live.[12]

---

[10] *Macias v. State*, 292 Ga. App. 225, 229 (2) (a) (664 SE2d 265) (2008) (punctuation omitted); *accord State v. Brantley*, 264 Ga. App. 152, 154 (589 SE2d 716) (2003).

[11] *Marlow v. State*, 288 Ga. 769, 770 (2) (707 SE2d 95) (2011) (punctuation omitted); *accord State v. Staley*, 249 Ga. App. 207, 209 (548 SE2d 26) (2001).

[12] *See Macias*, 292 Ga. App. at 229-30 (2) (a) (holding that there was sufficient probable cause to search a defendant's residence after evidence of drug dealing was found in his car during a traffic stop that was conducted when the defendant was coming from his residence, and noting that, under such circumstances, a practical,

Nevertheless, Creamer contends that our decisions in *Wiggins v. State*[13] and *Tuten v. State*[14] support his argument that there was insufficient probable cause to issue the search warrant when the marijuana was being sold out of a car instead of the location identified in the warrant. But his reliance on those cases is entirely misplaced.

In *Wiggins*, we held that an anonymous informant's wholly uncorroborated allegation that the defendant was selling drugs from his residence at some undisclosed time—even combined with evidence that the defendant legally possessed a firearm and a personal-use amount of marijuana during a traffic stop after leaving his home—was insufficient probable cause to support the search warrant for his

_____

common-sense conclusion could be made that the drugs and money had been at the defendant's residence a short time before the stop); *Ibekilo v. State*, 277 Ga. App. 384, 384-85 (1) (626 SE2d 592) (2006) (holding that the judge issuing the search warrant "plainly had a substantial basis" for determining that there was probable cause to issue the warrant of a residence when, *inter alia*, a reliable CI went to the residence, knocked on the door, entered, and then made a controlled purchase of what appeared to be heroin); *Perkins v. State*, 220 Ga. App. 524, 525 (1) (469 SE2d 796) (1996) (holding that a controlled buy at a particular home provided probable cause for the search of that residence).

[13] 331 Ga. App. 447 (771 SE2d 135) (2015) (physical precedent only).

[14] 156 Ga. App. 758 (275 SE2d 796) (1980).

7

residence.[15] Unlike in this case, after the investigating officer in *Wiggins* received the anonymous tip, there was "essentially no investigation to determine the anonymous informant's reliability or to corroborate his claims."[16] Indeed, the investigating officer surveilled the residence—where the defendant was allegedly distributing *50 pounds of marijuana* every week—for only ten minutes, during which she did not observe any evidence of drug dealing.[17] And although the defendant was later found with a personal-use amount of marijuana during a traffic stop, we explained that "it strain[ed] credulity to suggest that his possession of less than one ounce of marijuana in a single bag . . . is sufficient to demonstrate his possible involvement in a high volume drug-distribution operation."[18]

And in *Tuten*, after a police detective received information from a reliable informant that the defendant had a large quantity of drugs for sale, members of the "drug squad" placed the defendant's trailer under observation.[19] At some point, the

---

[15] *See Wiggins*, 331 Ga. App. at 450, 454.

[16] *Id.* at 451.

[17] *See id.* at 451-52.

[18] *Id.* at 452.

[19] 156 Ga. App. at 758-59.

8

informant entered the trailer; and shortly thereafter, the defendant exited the trailer, drove away, and returned in five minutes.[20] A few minutes later, the informant left the trailer and informed detectives that "he only took half of what [the defendant] brought back . . . ," and that the defendant "took the other half back to his stash (location unknown)."[21] At the suppression hearing, the officer who obtained the search warrant for the trailer was asked why he applied for a search warrant when the facts *affirmatively* showed that he had no knowledge of drugs actually being on the premises.[22] In response, the officer testified that "most people who deal in marijuana will some time have some around . . . ," but he admitted that he "was told [the drugs] were removed, [and he] wasn't sure that there wasn't anything (left) in [the] trailer."[23] Based on the foregoing, this Court held that there was insufficient probable cause to support the search warrant for the defendant's trailer because "the raid carried out was

---

[20] *See id.* at 759.

[21] *Id.* (punctuation omitted).

[22] *See id.*

[23] *Id.* (punctuation omitted).

9

on a mere suspicion that drugs which he knew nothing about might in fact be found within the premises."[24]

Contrary to Creamer's argument, the facts underlying our decisions in *Wiggins* and *Tuten* are easily distinguishable from those in this case in significant respects. Specifically, unlike in *Wiggins*, in which there was *no investigation* to corroborate the anonymous tip, the law-enforcement officers in this case investigated the tip and corroborated the tipster's allegations by using a known and reliable CI to purchase drugs at the Ward Drive residence on two different occasions. And also unlike this case, in *Tuten*, a reliable CI *expressly told* the investigating officer that all of the drugs had been *removed* from the residence to be searched, and the investigator sought the search warrant based on mere suspicion that, despite this representation by the CI, drugs would nevertheless be found there. But here, evidence showed that the investigator received an anonymous tip that drugs were being sold *from the residence to be searched*, and a reliable CI corroborated that tip by purchasing drugs twice from the man who answered the door of the residence. Under these particular circumstances, even though the prepackaged drugs were retrieved from a car directly in front of the residence, the investigator could have made a "fair presumption" that

---

[24] *Id.*

10

evidence of drug dealing, such as packaging materials and scales, would be found inside the home.[25]

2. Creamer also argues that there was no additional evidence to "correct the nexus issue" because, absent the controlled buys, the affidavit supporting the search warrant relied solely on an anonymous tipster, rather than a "concerned citizen," and there was no meaningful corroboration for the tip. But given our holding in Division 1 *supra* (*i.e.*, that the two controlled buys conducted just outside the door to Creamer's residence were sufficient probable cause for the search), we need not address Creamer's argument that the anonymous tip, standing alone, was insufficient probable cause.[26]

---

[25] *See supra* footnote 12; *see also Brown v. State*, 244 Ga. App. 440, 442 (1) (535 SE2d 785) (2000) ("Under the 'common sense' approach to search warrants, the controlled buy strongly corroborated the reliability of the informant and showed a fair probability that contraband would be found in the [residence].").

[26] *See Clemons v. State*, 257 Ga. App. 96, 100 (1) (574 SE2d 535) (2002) ("Under a totality of the circumstances approach, corroboration supplies an alternative basis for finding probable cause, where there are deficiencies in the showing of the informant's veracity, reliability, or basis of knowledge." (punctuation omitted)).

For all of the foregoing reasons, we affirm the trial court's denial of Creamer's motion to suppress evidence.

*Judgment affirmed. Phipps, P. J., and Peterson, J., concur.*