**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 1, 2022**

# In the Court of Appeals of Georgia

A22A0102. MEDINA-HERNANDEZ v. THE STATE.

BROWN, Judge.

In this interlocutory appeal, Galdino Medina-Hernandez appeals from the trial court's order denying his motion to suppress evidence found in a residence and a vehicle pursuant to a search warrant. He asserts that the four corners of the affidavit submitted in support of the search warrant are insufficient to show probable cause for entry into the residence and that the affidavit failed to state the "qualifications, indicia of reliability[,] and facts supporting the credibility of the unidentified 'DEA undercover officer.'" For the reasons explained below, we reverse the trial court's denial of the motion to suppress with regard to the residence, but affirm it with regard to the vehicle.

The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Our duty in reviewing the magistrate's decision in this case is to determine if the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrants. A magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court. The test for probable cause is not a hypertechnical one to be employed by legal technicians, but is based on the "factual and practical considerations of everyday life on which reasonable and prudent men act." Moreover, even doubtful cases should be resolved in favor of upholding a warrant.

(Citation and punctuation omitted.) *Taylor v. State*, 303 Ga. 57, 60-61 (2) (810 SE2d 113) (2018). Additionally, "in making the probable cause determination, a magistrate may draw 'reasonable inferences' from the material supplied to him by applicants for a warrant." (Citations and punctuation omitted.) Id. at 61 (2).

The record shows that Officer R. D. Gooden applied to the Gwinnett County Magistrate Court for a warrant to search the premises at a specific address in

2

Lawrenceville, Georgia. In support of the application, Gooden submitted an affidavit

that stated, in its entirety:

> In August 2018, members of DEA Atlanta initiated an investigation into a drug trafficking organization ("DTO") located in the Atlanta, Georgia metropolitan area. Through this investigation, agents have identified 483 Rustic Ridge Circle, Lawrenceville, GA 30043, as a possible drug stash location.
>
> During the week of September 24, 2018, a DEA undercover officer ("UC") exchanged several phone calls with an unidentified conspirator ("UM1"), all of which were recorded and maintained by law enforcement, during which UM1 agreed to coordinate the sale of drugs to the UC. Furthermore, during these calls, UM1 instructed the UC to meet with an unidentified drug courier in Duluth, Georgia, to obtain a trafficking amount of drugs.
>
> On September 27, 2018, DEA Atlanta initiated a surveillance operation in Duluth, Georgia in order to identify the drug courier. On the same date, the UC met with an unidentified drug courier ("UM2"), who was a passenger in a 2011 Yukon Denali, bearing Georgia license plate RLX6038. The vehicle is registered to a female at 483 Rustic Ridge Circle, Lawrenceville, GA 30043. During the meeting, UM2 showed the UC a trafficking amount of heroin. The UC did not purchase the drugs and left the area. DEA Atlanta continued surveillance on the Yukon as the driver, an unidentified female ("UF1") and UM2 traveled to Lawrenceville, Georgia. Agents observed UM2 exit the vehicle at a gas station, however, [he] did not remove any items from the vehicle and did not meet with anyone. Agents observed UM2 return to the vehicle. Once the vehicle left the gas station, again driven by UF1 with UM2 in the passenger seat, agents maintained surveillance on the vehicle and observed the vehicle travel to and park in the driveway of 483 Rustic Ridge Circle, Lawrenceville, GA 30043. Agents observed UM2 exit the vehicle and walk to the mailbox in the driveway. Agents then observed

> UF1 and UM2 walk towards the right front side of 483 Rustic Ridge Circle, Lawrenceville, GA 30043, where the front door of the residence is located. Agents were unable to observe UF1 and UM2 enter the residence due to foliage blocking the view from the roadway.
>
> I believe, based on the aforementioned events, that UM2 and UF1 traveled to 483 Rustic Ridge Circle, Lawrenceville, GA 30043 with the drugs that UM2 had shown to the UC.

In a signature box on the affidavit form, Gooden identified himself as a member of the Roswell Police Department, but provided no further facts about his relationship to the case.

Less than one minute after Gooden submitted the warrant application, a magistrate judge granted it and issued a warrant permitting police to search the premises. During the execution of the search warrant, more than 28 grams of suspected methamphetamine was found inside the residence and approximately 1,000 grams of herion was found inside the Yukon. The State subsequently indicted Medina-Hernandez for two counts of trafficking in these illegal drugs. Medina filed a motion to suppress evidence seized pursuant to the search warrant, which the trial court denied. This Court granted Medina-Hernandez's application for an interlocutory appeal, but the ensuing appeal was remanded to the trial court for completion of the

4

record as it did not contain the search warrant or the affidavit for the search warrant. The current appeal was docketed following completion of the record.

1. Medina-Hernandez contends that the trial court should have granted the motion to suppress evidence found within the residence based upon a lack of probable cause that drugs would be found within the residence. We agree.

Our research has revealed no Georgia decisions addressing a fact scenario substantially similar to that presented in this case. Specifically, whether evidence of drug trafficking by an unknown male passenger in a vehicle provides probable cause to search an address at which the vehicle was registered to an unidentified female, where that unknown female drove herself and the unknown male to the address immediately after the drug trafficking activity, parked the car, and presumably went inside the premises with the unknown man.

Other jurisdictions considering whether drug activity outside a residence provides probable cause to issue a warrant to search a residence have reached different conclusions. The D. C. Circuit Court of Appeals has

> held that observations of drug dealing outside the home provide probable cause for a warrant to search a drug dealer's home. In general, observations of illegal activity occurring away from the suspect's residence, can support a finding of probable cause to issue a search

5

warrant for the residence, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence. Common experience suggests that drug dealers must mix and measure the merchandise, protect it from competitors, and conceal evidence of their trade — such as drugs, drug paraphernalia, weapons, written records, and cash — in secure locations. For the vast majority of drug dealers, the most convenient location to secure items is the home. After all, drug dealers don't tend to work out of office buildings. And no training is required to reach this commonsense conclusion.

(Citations and punctuation omitted.) *United States v. Spencer*, 530 F3d 1003, 1007 (II) (D.C. Cir. 2008). See also *United States v. Meryl*, 322 Fed. Appx. 871, 874 (11th Cir. 2009) (magistrate entitled to make "common sense finding that drug dealers are likely to keep evidence of their drug business at home") (citation and punctuation omitted); *United States v. Williams*, 974 F2d 480, 481-482 (II) (4th Cir. 1992) (affidavit clearly established that defendant was a drug dealer currently residing in a motel and magistrate properly considered "the likelihood that drug paraphernalia would be found in the motel room of a known drug dealer").

The Sixth Circuit Court of Appeals, on the other hand, has

never held . . . that a suspect's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home.

Rather, we have required some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that is, we have required facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence. Our emphasis on the fact-intensive nature of the probable cause inquiry in known drug dealer cases accords with the [United States] Supreme Court's rejection of rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach when evaluating probable cause. This emphasis likewise comports with the Supreme Court's instruction that the critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought. Finally, our totality-of-the-circumstances probable cause inquiry for search warrants for the home of an allegedly known drug dealer honors the Fourth Amendment's safeguards against unreasonable governmental intrusion into the home.

(Citations and punctuation omitted.) *United States v. Brown*, 828 F3d 375, 383-384 (II) (A) (1) (6th Cir. 2016). See also *United States v. Rios*, 881 FSupp. 772, 776-777 (B) (D. Conn. 1995) (officer's "general averments based on her training and experience do not, standing alone, constitute a 'substantial basis' for the issuance of

this search warrant" for the residence of a drug trafficker) (citation and punctuation omitted).

Regardless of which approach should be applied in Georgia,[1] a common thread in these cases is that the address to be searched is known to be the residence of a suspected drug dealer or trafficker. See, e.g., *United States v. Jones*, 345 Fed. Appx. 872, 877 (I) (B) (4th Cir. 2009) (affidavit "clearly establishes the apartment . . . as [the] residence" of a suspected drug dealer). Compare *People v. Hernandez*, 30 Cal. App. 4th 919, 924 (Cal. Ct. App. 1994) (affidavit failed to establish sufficient nexus between the criminal activities and the residence where "no information was presented that [the defendant] owned the vehicles [parked behind the residence], lived at the . . . residence, received mail or phone calls at the residence, or was seen carrying packages to and from it"). In *Cleveland v. State*, 290 Ga. App. 835 (660

---

[1] We previously have recognized that officers are "not required to see drugs at the residence" to establish probable cause for the issuance of a search warrant. *State v. Alvin*, 296 Ga. App. 402, 404 (674 SE2d 348) (2009). Accordingly, we have found a sufficient nexus between a residence and illegal activity where a confidential informant purchased illegal drugs on the premises, *Creamer v. State*, 337 Ga. App. 394, 396-397 (1) (788 SE2d 69) (2016), as well as when evidence of drug dealing was found in a defendant's car after he left his residence and "[a] practical common-sense conclusion [could be drawn that the defendant] was dealing in methamphetamine, and that he, the drugs, and the money had been at his residence a short time before the traffic stop." *Macias v. State*, 292 Ga. App. 225, 229 (2) (a) (664 SE2d 265) (2008).

SE2d 777) (2008), this Court concluded that a substantial basis existed for the issuance of a search warrant of a residence where the police confirmed that the driver of a vehicle in which methamphetamine was found was the owner of the residence. Id. at 836-837 (1). See also *Davis v. State*, 256 Ga. App. 299, 302 (1) (568 SE2d 161) (2002) (affidavit provided information verifying address of alleged drug dealer).

In this case, it does not appear that the police conducted surveillance to determine how long the unknown male and female remained at the premises and the affidavit provided no information about the time of day they went inside. Nor is any information included about the ownership of the residence or whether the driver's license information for the female to whom the car was registered matched a description of the unknown female who entered the residence. Finally, nothing in the affidavit shows that either occupant of the vehicle carried something believed to be illegal drugs into the residence. Based upon the totality of the particular facts and circumstances of this case, we conclude that there was not a substantial basis for concluding that probable cause existed to search the residence.[2] See *Brown*, 828 F3d

---

[2] We need not address the issue of standing in this case. A police officer averred that the searched address was Medina-Hernandez's residence in an affidavit seeking his arrest *after* the search was conducted, and the State did not contest the issue of standing below or raise a lack of standing in its brief before this Court. See *Lowe v. State*, 295 Ga. 623, 626 (3) (759 SE2d 841) (2014) ("[A]lthough the burden

at 383 (II) (A) (1) (although facts supported search of car, they "did not establish a fair probability that evidence of drug trafficking would be found at [defendant's] residence"). Compare *State v. Hunter*, 282 Ga. 278, 280 (646 SE2d 465) (2007) (police did not have to observe defendant living with female at new location "to reach the logical conclusion based on the information provided to them that the pair could still be living together" in the new location). Accordingly, the trial court erred by denying this portion of Medina-Hernandez's motion to suppress.[3]

2. Medina-Hernandez asserts that all evidence seized pursuant to the search warrant should have been suppressed because the affidavit submitted in support of the search warrant failed to include the undercover officer's qualifications or facts supporting the undercover officer's reliability. He also points out that the officer submitting the affidavit failed "to include any information in the affidavit regarding his own knowledge or qualifications relevant to the case, or his knowledge of the

---

of proving that the search and seizure were lawful shall be on the State, the defendant bears the burden of proof where his or her standing to raise a challenge to the legality of a search or seizure is contested by the State.") (citation and punctuation omitted).

[3] We note that the Supreme Court of Georgia has questioned the continued vitality of its decision in *Gary v. State*, 262 Ga. 573 (422 SE2d 426) (1992), with respect to whether the exclusionary rule should apply to searches in which an officer relies in good faith on the validity of a search warrant. *Mobley v. State*, 307 Ga. 59, 76 (4) (a), n.21 (834 SE2d 785) (2019).

unidentified officer's qualifications." As we have already concluded that a search of the residence was not justified by probable cause, we will only consider whether these arguments provide a basis to suppress the evidence found in the vehicle.

We find no merit in Medina-Hernandez's claim with regard to the reliability of the undercover officer. "[W]e have repeatedly held that one officer may present an affidavit in support of a search warrant based on statements obtained from another officer; that such hearsay is reliable under the circumstances; and that the officer communicating the information to the affiant need not personally appear before the magistrate." *State v. Wells*, 332 Ga. App. 404, 406 (1) (771 SE2d 906) (2015). With regard to the affiant's failure to explain his relationship to the case, the magistrate was entitled to draw "reasonable inferences from the material supplied to him," *Taylor*, 303 Ga. at 61 (2), and conclude that the affiant was involved in the DEA investigation outlined in his affidavit. Moreover, "the veracity and basis of knowledge of persons supplying hearsay information[,]" *Moon v. State*, 312 Ga. 31, 57 (4) (860 SE2d 519) (2021), while considered in determining probable cause, is not "independently dispositive." *Curry v. State*, 255 Ga. 215, 217 (1) (336 SE2d 762) (1985). Based on the totality of the circumstances and the deference we owe to the

magistrate's decision, we conclude that the magistrate had a substantial basis for concluding that probable cause existed to search the vehicle.

*Judgment affirmed in part, reversed in part. Barnes, P. J., and Hodges, J., concur*.