**FOURTH DIVISION
DILLARD, P. J.,
BROWN and PADGETT, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 12, 2025**

# In the Court of Appeals of Georgia

A24A1289. CIVIL v. THE STATE.

PADGETT, Judge.

Marvin Civil was found guilty by a jury and convicted of computer pornography and criminal attempt to commit a felony (child molestation). On appeal, Civil challenges his convictions and the denial of his amended motion for new trial, contending that the trial court erred in denying his motion to suppress evidence obtained pursuant to a search warrant for his cell phone records. Specifically, Civil argues the warrant was overbroad, not sufficiently particularized as to the items to be searched for and seized, and the execution of the warrant exceeded the scope of the warrant. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict, *Jackson v. Virginia*, 443 US 307 (99 SCt 2781, 61 LE2d 560) (1979), the record shows that in May 2020, the Cherokee County Sheriff's Office began an undercover operation by posting an ad purportedly of a "girl" on an internet site that was widely known to be frequented by escorts and those seeking escorts. The ad included general information about the "girl" but the telephone number listed on the site as a contact number was actually provided by the GBI. That number was monitored by an undercover law enforcement officer who responded to communications as if the officer was a fourteen year old girl. Several times throughout the month, Civil used his work phone with an assigned number ending in 7097 to reach out to the "girl."

On May 18, 2020, using the 7097 number, Civil sent a text message asking if the "girl" was available and the undercover agent responded affirmatively. After communicating back and forth about meeting for a "QV,"[1] the undercover officer sent a message to Civil at the 7097 number stating "Iam 14. . . . [sic]" After discussing how the transaction would be illegal if the "girl" was really only 14 years old, Civil stopped communicating with the officer using the 7097 number. About 15 minutes later, Civil

---

[1] The officer testified that "QV" was a "term for quick visit which is typically a sexual term for oral sex or something similar that's really quick."

contacted the "girl" again using a phone number ending in 4338. They resumed discussing a possible transaction, and the undercover officer sent a message to the 4338 number stating "and your cool with me being almost 15[?] [sic]" Civil responded "you know that's illegal right," and without any further elaboration, sent another message a few minutes later saying "Ok fine let's meet. . . ." The "girl" repeatedly told Civil that she would be in route soon and that she was attempting to think up an excuse to provide to her mom to justify her leaving home. The "girl" also notified Civil that she would be walking to the proposed meeting location because she could not drive due to her purported age. Civil arranged to meet the "girl" at an aquatic center, but when he arrived and learned that the facility was closed, he changed the location to a nearby convenience store and told the "girl" they would meet at the convenience store and have sex in the car. Meanwhile, officers were waiting at the convenience store in an unmarked blue SUV. Upon arriving at the convenience store, Civil messaged the "girl," alerting her that there were police in an unmarked blue SUV at the convenience store. After fleeing the convenience store, Civil continued messaging the "girl" and asked her to go into the bathroom of the convenience store to take a photo of her breasts and send it to him, indicating he would pay an additional

sum of money for the photograph. In response, the "girl" asked him to send a photo of his current location and car so that she could ensure he was not merely trying to obtain a free photo of her breasts. Civil then sent a picture of him sitting in a maroon SUV in front of a Home Depot. One of the officers looked at the photo sent by Civil and recognized the Home Depot where the maroon SUV was parked.[2] The officers also noted that when Civil had driven through the parking lot of the convenience store and changed the meeting location after he saw there were police present at the store, they noted that he had something hanging from his rear view mirror.

The officers then drove to the Home Depot, and, upon noticing the maroon SUV with something hanging from the rear view mirror, made contact with Civil. When the officers approached Civil, he exclaimed "[h]ow did you find me?" and "how did you know it was me?" The officers then called the phone number ending in 4338 and the phone rang inside of the maroon SUV. Upon a search incident to arrest, the officers found two phones in the maroon SUV. Officers later obtained a search warrant seeking permission to search the phones found in Civil's possession

---

[2] There were a number of other communications making clear that Civil wanted to have sexual relations with the "girl," but are not all recounted here as they are not relevant to the question presented in this appeal.

and recover certain data from the phones. The search warrant also indicated that law enforcement officials were seeking the listed data "[w]hich is evidence that a crime has been or is being committed, to wit: 16-4-1 Criminal Attempt to Commit a Felony-16-4-1." The officer included in his affidavit the fact that due to his knowledge, training and experience, including his work with the GBI Crimes Against Children taskforce for several years, that he believed relevant evidence would be found on these phones. The warrant application affidavit recounted the facts of the case, including the date of the offense and many of the facts set forth above.

Civil was arrested and eventually indicted for one count of attempt to commit a felony (child molestation) and for one count of computer pornography. Before trial, Civil filed a motion to suppress evidence obtained through the search warrants for his cell phones, alleging that the search warrant affidavits lacked sufficient probable cause, sufficient particularity as to data to be searched for and seized, the search warrants were overbroad, and were improperly executed. Following a hearing, the trial court denied Civil's motion to suppress and the case proceeded to trial.

At trial, the undercover officer, a digital forensic analyst, a geographical information analyst, and Civil all testified. Evidence from the phones was introduced,

5

including text messages exchanged between Civil and the "girl," geolocation data showing Civil's cell phones were located at the convenience store and aquatic center on the day in question, and information indicating Civil was the owner of both phones. Following the trial, the jury found Civil guilty of criminal attempt to commit a felony and computer pornography.[3]

1) On appeal, Civil argues the trial court erred in denying his motion to suppress evidence obtained from the search warrants. Civil argues the warrant was not particularized as to the items to be searched for and seized, and the warrant was overbroad. We disagree.

When considering the denial of a motion to suppress, we view the evidence "in favor of the court's ruling, and we review de novo the trial court's application of the law to undisputed facts." *Creamer v. State*, 337 Ga. App. 394, 395 (788 SE2d 69) (2016) (citation and punctuation omitted).

> Where the basis for the issuance of a search warrant has been challenged, [the Supreme Court of Georgia] has stated

---

[3] Civil was sentenced to 5 years in confinement followed by 5 years on probation on one count of criminal attempt to commit a felony (child molestation) and 5 years in confinement followed by 10 years on probation for the computer pornography count, those sentences to be served concurrently.

that doubtful cases should be resolved in favor of upholding the determination that issuance of a warrant was proper, reflecting both a desire to encourage use of the warrant process by police officers and a recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case.

*Reyes-Castro v. State*, 352 Ga. App. 48, 59-60 (1) (b) (833 SE2d 735) (2019) (citation and punctuation omitted).

Our Supreme Court has repeatedly reiterated that searches of cell phones are governed by the Fourth Amendment and that a search warrant which authorizes the search of a cell phone "require[s] that a search warrant particularly describe the article or articles sought." *State v. Wilson*, 315 Ga. 613, 614 (884 SE2d 298) (2023) (citation omitted). This particularity requirement is intended to prevent general, exploratory searches of personal property which have always been rejected as constituting a violation of the Fourth Amendment. *Marron v. United States*, 275 U. S. 192, 195 (1), (48 SCt 74, 72 LE 231) (1927). "The particularity requirement is applied with a practical margin of flexibility, depending on the type of property to be seized, and a description of property will be acceptable if it is as specific as the circumstances and

nature of activity under investigation permit." *Wilson*, at 615 (citation and punctuation omitted).

Our Supreme Court has also made it clear that when a search warrant for electronic devices lists the items for which law enforcement officers are authorized to search, that the request should be read in context and as a whole as opposed to reading the items that the officer is seeking to discover in isolation. See *Perez v. State*, 316 Ga. 433, 448 (3) (c) (888 SE2d 526) (2023). Citing *United States v. Reichling*, 781 F3d 883, 887 (7th Cir.) (2015), the *Perez* Court noted that "a judge is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense" and "that the probable-cause inquiry must be grounded in both an understanding of criminal behavior and of modern technology." *Perez*, 316 Ga. at 449 (3) (c).

In this case, the warrant listed eight categories of information which were believed to be found on Civil's two phones and which were relevant to the crime that the affidavit alleged that Civil has committed - criminal attempt to commit a felony. That list included: all texts, all video files and photographs, all applications, all files that would show ownership, all search history, all call logs, all files that contain data,

8

and all e-mails including Facebook messenger. However, the list was followed by the following limiting language: "[w]hich is evidence that a crime has been or is being committed, to wit: 16-4-1 Criminal Attempt To Commit A Felony - 16-4-1." This additional language is quite similar to that we approved of in *Reyes-Castro*, 352 Ga. App. at 60. The limiting statement only authorized a search for the eight categories of information that were also related to the crime identified within the warrant application - a crime that had been fully described within the attached affidavit. See *Palmer v. State*, 310 Ga. 668, 675 (2) (c) (853 SE2d 650) (2021); *Westbrook v. State*, 308 Ga. 92, 97 (3) (a) n.5 (839 SE2d 620) (2020). The inclusion of the limiting language which connected all of the items for which law enforcement officials were authorized to search to the underlying crime for which probable cause had been established within the affidavit makes this case factually distinguishable from *Wilson*, 315 Ga. at 615-616.

The warrant specifically provided that the issuing judge had concluded that there was probable cause to believe that a crime had been committed based on the officer's affidavit. That conclusion was reached after evaluation of the detailed description of the crime, the involvement of the cell phones with that crime, the dates

9

of the crime, and the locations of the crime as attested to by the affiant. This Court has stated that "the particularity requirement [of a search warrant] only demands that the executing officer be able to identify the property sought with reasonable certainty." *Henson v. State*, 314 Ga. App. 152, 155 (723 SE2d 456) (2012) (citation and punctuation omitted). Here, given the warrant's reference to the specific phones, the crime at issue, and to the specific date on which the crime was allegedly committed, as contained within the affidavit, we conclude that the warrant was sufficiently particular to notify the detective, the analyst, and/or any other executing officer of what evidence he or she was authorized to obtain from Civil's phones and to prevent a general exploratory search of the other downloaded content for evidence of unrelated crimes or other unauthorized purposes. See *Reyes-Castro*, 352 Ga. App. at 60-61 (1) (b) (search warrant that authorized the search of "any and all of the phone's content" was sufficiently particular where affidavit included the property to be searched, the crime committed, and the dates the crimes were committed) (punctuation omitted).

We note that the evidence that Civil now alleges was recovered from his cell phones improperly was largely duplicative of other admissible evidence that was

obtained from other sources and introduced during trial. For example, the geolocation data recovered by the cell phones showed that, on the date in question, Civil's cell phones were located at the convenience store and the Home Depot at the relevant time period. Officers testified that they were personally present and saw Civil at both locations on the date and time in question. The text messages that were recovered from Civil's phones were also fully documented on the cell phone that was in the possession of the officer who posed as the "girl" during this investigation. Whether the information contained within the text exchanges were obtained from Civil's phones or the phone used by the undercover officer is largely immaterial.

For the foregoing reasons, we find that the trial court did not err in denying Civil's motion to suppress based upon particularity concerns. This enumeration of error is without merit.

2) Civil further argues on appeal that the execution of the warrant exceeded the scope of the warrant. Specifically, he argues the warrant did not authorize the seizure of any "location data" or "KML files" from his phone. The record reflects Civil filed a pre-trial motion to suppress the items seized in the search on the ground that the search warrant was not sufficiently particularized. The written motion, as

amended, did not allege that the officers exceeded the scope of the search authorized by the search warrant. In the motion hearing, counsel for Civil only argued that the warrant violated the particularity requirement and never raised any issue involving the resulting search exceeding the scope of the search authorized by the warrant. The record shows that the trial court only ruled on probable cause and particularity, but did not make any finding relating to whether the execution of the warrant exceeded the scope of the authorized search. Further, Civil failed to object to the geolocation data being admitted into evidence when it was offered during the trial. It is well settled that

> issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken, because one may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court.

*Stembridge v. State*, 331 Ga. App. 199, 203 (770 SE2d 285) (2015). In short, we cannot consider this argument raised for the first time on appeal. *Castillo v. State*, 281 Ga. 579, 581 (2) (642 SE2d 8) (2007) (citation and punctuation omitted).

However, even if Civil had sought a pretrial ruling on the geolocation data being admitted during the pretrial hearing or at the time it was tendered at trial, such an objection would have been fruitless. It is undisputed that any geolocation data located on the phones would fall within the definition of "all files that could contain data . . ." related to the commission of the crime of criminal attempt to commit the felony of child molestation on the dates listed within the search warrant affidavit. As addressed above, that evidence was properly secured via the search warrant. This argument would have been meritless even if it had been preserved for appellate review.

For the reasons outlined above, we affirm.

*Judgment affirmed. Dillard, P. J., and Brown, J., concur.*